**Ralph NADER, Esq., et al., Plaintiffs,**

**v.**

**John VOLPE et al., Defendants.**

**Civ. A. No. 2100–71.**

United States District Court, District of Columbia.

Jan. 28, 1972.

Gerald M. Stern, and Michael N. Sohn, of Arnold & Porter, Washington, D. C., for plaintiffs.

L. Patrick Gray, III, Asst. Atty. Gen., Harold H. Titus, Jr., U. S. Atty., and Irwin Goldbloom, Atty., Dept. of Justice, Washington, D. C., for defendants; John Barnum, Gen. Counsel, Lawrence R. Schneider, Chief Counsel, National Highway Traffic Safety Administration, and Frank Berndt, Atty. National Highway Traffic Safety Administration, U. S. Dept. of Transportation, Washington, D. C., of counsel.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

WADDY, District Judge.

This matter is before the Court on plaintiff's motion for a preliminary injunction to require the defendants to immediately cause to be placed in the Department of Transportation's public Rules Docket 69–7 "all currently existing memoranda, slips of transmittal, notes, and any other documents, prepared from March 3, 1971, through September 29, 1971, of phone conversations, personal meetings, and any other contacts between officials of the Department of Transportation and officials in the Office of the President where such contacts related in whole or in part to automobile occupant restraint systems"; and, in any case where no such memoranda exists, to cause the appropriate officials of the Department of Transportation to prepare such memoranda describing the participants in and substance of all such contacts and place such prepared memoranda in the aforementioned Public Docket. The Court having considered the complaint; the

affidavits, memoranda and exhibits in support of the motion and in opposition thereto; having heard the arguments of counsel and having examined, *in camera,* what defendants represent to be all the communications, memoranda and documents in their possession emanating from the Office of the President of the United States between March 3, 1971 and September 29, 1971 which relate to passive restraint systems for automobiles, makes the following findings of fact and conclusions of law.

### Findings of Fact

1. Plaintiff, Ralph Nader, is a resident of the District of Columbia. Plaintiff, Center for Auto Safety, is a nonprofit corporation chartered under the laws of the District of Columbia. Both plaintiffs desire to submit comments to the Department of Transportation, to be included in public Rules Docket 69–7, concerning the proposed amendment to Motor Vehicle Safety Standard No. 208, 49 C.F.R. 571.21, which amendment would have the effect of postponing the deadline by which automobile manufacturers would be required to install passive restraint systems in automobiles from the 1974 model year to the 1976 model year.

2. Defendant John Volpe is Secretary of the Department of Transportation and is the official to whom Congress has delegated responsibility for the administration of the National Traffic and Motor Vehicle Safety Act of 1966, 15 U.S.C. §§ 1381–1431, (hereinafter Motor Vehicle Safety Act) and for the promulgation of Federal Motor Vehicle Safety Standards. Defendant Douglas Toms is Director of the National Highway Traffic Safety Administration (NHTSA) and is the official to whom authority to administer portions of the Motor Vehicle Safety Act has been redelegated by defendant Volpe.

3. As an element of its injury prevention program, the NHTSA had adopted, as one of its first standards, a standard making seat belts mandatory in passenger cars manufactured after January 1, 1968. By mid-1969 there were strong indications that the use of seat belts by the motoring public was very low. Concurrently, the development of new types of restraints offered hope that vehicles could be equipped with restraints that did not depend on the active cooperation of occupants for their effectiveness. Accordingly, on June 26, 1969, the National Highway Safety Bureau (predecessor to the NHTSA) issued an advance notice of proposed rulemaking entitled "Inflatable Occupant Restraint Systems", in which the agency first announced that it was considering a motor vehicle safety standard that would require motor vehicle manufacturers to install some form of passive occupant restraint system in their vehicles by January 1, 1972 (34 Fed.Reg. 11148; July 2, 1969). This announcement invited interested persons to submit written data, views or arguments pertaining to the notice and stated that all comments would be available in the public Rules Docket for examination.

4. On March 3, 1971, a passive restraint amendment was annexed to Motor Vehicle Safety Standard No. 208 by the National Highway Traffic Safety Administration. (36 Fed.Reg. 4600; March 10, 1971).

Among other things the March 3, 1971, amendment provided that effective August 15, 1973, passenger car manufacturers will be required to provide one of two options for passive occupant protection which may be summarized as follows:

(1) A complete passive protection system that would protect occupants from serious injury in the crash at speeds up to 30 mph. Protection is required for occupant in all seating positions in frontal, angular, lateral and rollover crashes.

(2) A passive protection system for the front seat occupants in a head-on collision. This system must protect unbelted occupants in head-on crashes up to 30 mph. In addition, it includes a lap belt at each seating position, of-

fering wearers additional protection in rollovers and other non-frontal crashes. A seat belt warning system, required under this option, activates an audible and visible warning when one or both of the outside front seat positions are occupied and seat belts are not used. The injury criteria must be met in a head-on crash test with and without the lap belts fastened.

The March 3 rule also provided that beginning August 15, 1975, no manufacturer will be allowed to produce any passenger car that does not provide complete passive protection in all these modes at all seating positions.

5. On April 30, 1971, Chrysler Corporation filed a petition for review of the March 3, 1971, rule in the United States Court of Appeals for the Sixth Circuit. On May 3, 1971, similar petitions for review were filed in that Court by Jeep Corporation, American Motors Corporation, and Ford Motor Company. On May 7, 1971, the Automobile Importers of America (AIA), representing most of the foreign automobile manufacturers in the world, filed a similar petition for review of the March 3, 1971, rule in the United States Court of Appeals for the District of Columbia Circuit. On June 15, 1971, respondents filed a motion in the United States Court of Appeals for the District of Columbia Circuit requesting that the AIA petition for review be transferred to the United States Court of Appeals for the Sixth Circuit pursuant to the mandatory transfer provisions of 28 U.S.C. § 2112 (a). The motion was granted and the case was transferred and filed in the Sixth Circuit on July 12, 1971. Subsequently, the Sixth Circuit consolidated all of these cases. On June 15, 1971, NHTSA filed a certified list of all the material constituting the administrative record on which the March 3, 1971, order was based, in the Sixth Circuit.

6. After issuance of the March 3, 1971 order a number of manufacturers, including each of the individual manufacturers before the Sixth Circuit and several member companies of the Automobile Importers of America filed administrative petitions for reconsideration. The issues on which reconsideration was requested included most prominently the sufficiency of the lead time necessary to implement a passive restraint system for the front seating positions. The petitions for reconsideration were placed in the public Rules Docket 69–7.

7. On September 29, 1971, in response to the manufacturers' petitions for reconsideration the National Highway Traffic Safety Administration issued two notices identified as Docket No. 69–7, Notice 12 and Docket No. 69–7, Notice 13 (36 Fed.Reg. 19254 and 36 Fed.Reg. 19266, October 1, 1971).

In Notice 12, the agency stated its disposition of the issues raised by the petitions for reconsideration of the March 3 rule and adopted minor amendments to the readiness indicator requirements, the frontal barrier crash requirement, the loading conditions for certain vehicles, and the positioning of the test dummy. Notice 12 does not adopt any amendments with respect to a postponement of the deadline for installation of passive restraint systems set forth in defendants' order of March 3, 1971. It does, however, clearly state the agency's intention to postpone the deadline and then refers to a simultaneously published notice of proposed rulemaking (Notice 13) which, if finally adopted, would permit a third restraint option between August 15, 1973, and August 15, 1975 thus effecting the agency's announced intention.

8. The option proposed in Notice 13 would consist of a seatbelt system with an ignition interlock feature that would prevent starting the vehicle's engine unless front seat occupants have operated their belts after being seated. The system would retain the belt warning system, and, in addition, would require the belt systems to meet the standard's injury criteria in a 30 mph head-on barrier crash. Notice 13 established No-

vember 2, 1971, as the date by which comments had to be received.

9. On October 8, 1971 plaintiffs requested by letter that: (1) defendants cause to be placed in the public Rules Docket 69–7 all currently existing memoranda or other documents reflecting the substance of contacts between officials of the Department of Transportation and any other person, including officials in the Office of the President, where such contacts related to the safety standard pertaining to passive occupant restraint systems published on March 3, 1971; and (2) in any case where there were contacts of the type described in paragraph (1) but no memoranda or other documents had been prepared and placed in the public Rules Docket 69–7, defendants cause to be prepared and placed in the public Rules Docket memoranda describing the substance of all such contacts.

10. By letters dated October 14, 1971 and October 15, 1971, defendants refused plaintiffs' formal request to complete the public Rules Docket as requested by plaintiffs, insisting that to accede to that request would require the recording of "intragovernmental communications" which they contended need not be included in the public Rules Docket.

11. On October 18, 1971, plaintiffs, Ralph Nader and the Center for Auto Safety, filed a complaint in this Court seeking a mandatory injunction requiring defendants John Volpe, Secretary of the Department of Transportation, and Douglas Toms, the Administrator of the National Highway Traffic Safety Administration to place the requested documents and memoranda in the public rulemaking docket. On October 20, 1971, plaintiffs filed a motion for preliminary injunction to require the defendants to immediately place in the NHTSA's public rulemaking docket certain alleged communications between the Office of the President and the defendants which plaintiffs alleged were an essential element in defendants' decision to amend Standard No. 208 and, unless revealed,

would cause plaintiffs to be unable to effectively comment upon the proposed rulemaking announced in Notice 13.

12. The relevant statutory and regulatory provisions are as follows:

A. The Motor Vehicle Safety Act, 15 U.S.C. §§ 1381–1431, provides, in relevant part:

"§ 1392. *Motor vehicle safety standards—Establishment*

"(a) The Secretary shall establish by order appropriate Federal motor vehicle safety standards. Each such Federal motor vehicle safety standard shall be practicable, shall meet the need for motor vehicle safety, and shall be stated in objective terms.

*"Applicability of Administrative Procedure Act*

"(b) The Administrative Procedure Act shall apply to all orders establishing, amending, or revoking a Federal motor vehicle safety standard under this subchapter.

\*　　\*　　\*　　\*　　\*　　\*

*"Amendment and revocation of standards*

"(e) The Secretary may by order amend or revoke any Federal motor vehicle safety standard established under this section. Such order shall specify the date on which such amendment or revocation is to take effect which shall not be sooner than one hundred and eighty days or later than one year from the date the order is issued, unless the Secretary finds, for good cause shown, that an earlier or later effective date is in the public interest, and publishes his reasons for such finding.

*"Factors to be considered in prescribing standards*

"(f) In prescribing standards under this section, the Secretary shall—

"(1) consider relevant available motor vehicle safety data, including the results of research, development,

testing and evaluation activities conducted pursuant to this chapter;

"(2) consult with the Vehicle Equipment Safety Commission, and such other State or interstate agencies (including legislative committees) as he deems appropriate;

"(3) consider whether any such proposed standard is reasonable, practicable and appropriate for the particular type of motor vehicle or item of motor vehicle equipment for which it is prescribed; and

"(4) consider the extent to which such standards will contribute to carrying out the purposes of this chapter."

"§ 1394. *Judicial review of orders establishing standards; additional evidence before Secretary; certified copy of transcript*

"(a) (1) In a case of actual controversy as to the validity of any order under section 1392 of this title, any person who will be adversely affected by such order when it is effective may at any time prior to the sixtieth day after such order is issued file a petition with the United States court of appeals for the circuit wherein such person resides or has his principal place of business, for a judicial review of such order . . ."

B. The Administrative . Procedure Act provides in relevant part at 5 U.S.C. § 553(c):

"After notice required by this section, the agency is to give interested persons an opportunity to participate in the rule making through submission of written data, views or arguments with or without opportunity for oral presentation."

C. The rulemaking procedures applicable to the promulgation of motor vehicle safety standards, 49 C.F.R., Part 553, provide, in relevant part:

"§ 553.5 *Regulatory docket.*

"(a) Information and data deemed relevant by the Director relating to rulemaking actions, including notices of proposed rule making; comments received in response to notices; petitions for rule making and reconsideration; records of additional rulemaking proceedings under § 553.25; and final rules are maintained in the Docket Room, National Highway Safety Bureau, Room 4223, 400 Seventh Street, S.W., Washington, D. C. 20591.

"(b) Any person may examine any docketed material at the Docket Room at any time during regular business hours after the docket is established, except material ordered withheld from the public under sections 112 and 113 of the Act (15 U.S.C. 1401, 1402) and section 552(b) of title 5 of the United States Code, and may obtain a copy of it upon payment of a fee."

"§ 553.35 *Petitions for Reconsideration.*

"(a) Any interested person may petition the Director for reconsideration of any rule issued under this part. The petition *must* be submitted to the Docket Room, National Highway Safety Bureau, Room 4223, 400 Seventh Street S.W., Washington, D. C. 20591. It is requested, but not required, that 10 copies be submitted. The petition must be received not later than 30 days after publication of the rule in the *Federal Register*. Petitions filed after that time will be considered as petitions filed under § 553.31. The petition must contain a brief statement of the complaint and an explanation as to why compliance with the rule is not practicable, is unreasonable, or is not in the public interest." (emphasis supplied).

13. On October 29, 1971, after noting that the rulemaking procedures applicable to the promulgation of motor vehicle safety standards require that all petitions for reconsideration of a rule *must* be made part of the public Rules Docket

(49 C.F.R. 553.35), the Court ordered the defendants to "submit to the Court forthwith for examination, *in camera*, all communications, memoranda and documents in their possession emanating from the Office of the President of the United States between March 3, 1971 and September 29, 1971 relating to occupant crash protection for passenger cars, also referred to as passive restraint systems, in order that the Court may determine whether such communications, memoranda and documents constitute petitions for reconsideration of Standard No. 208 dated March 3, 1971."

The defendants thereupon filed an affidavit and claim of executive privilege signed by James Beggs, Under Secretary of Transportation of the United States Department of Transportation. The affidavit stated that there were two documents which should be produced pursuant to the Court's order but the defendants claimed executive privilege as to those documents and refused to comply with the order.

The Court then amended its order of October 29, 1971 to the effect that the defendants, instead of being required to produce the documents forthwith, were required to produce them by November 1, 1971 at 10:00 A.M. The Court also granted the defendants permission pursuant to the provisions of 28 U.S.C. § 1292(b) to immediately appeal the Order of October 29, 1971 as amended.

On November 2, 1971 the Court stayed its Order of October 29, 1971, as amended, pending the defendants appeal to the United States Court of Appeals.

14. On November 10, 1971 the plaintiffs filed a motion requesting that the defendants be enjoined from issuing a final rule based on Notice 13, Docket 69–7 until ten days subsequent to final disposition by the Court of plaintiffs' motion for preliminary injunction. This Court denied the motion on the ground of no jurisdiction. On November 12, 1971 the United States Court of Appeals decided that jurisdiction to rule on the

plaintiffs' motion of November 10, 1971 remained in the District Court as permission to appeal under 28 U.S.C. § 1292(b) had not yet been ruled upon by the Court of Appeals.

On November 12, 1971 this Court ordered the defendants to "refrain from the issuance of a final rule based upon Notice 13, Docket 69–7 until ten days subsequent to final disposition by this Court of plaintiffs' motion for preliminary injunction, or until receipt of plaintiffs' comments on Notice 13, whichever first occurs."

15. On November 22, 1971 the United States Court of Appeals denied defendants' petition for permission to appeal this Court's order of October 29, 1971 as amended requiring defendants to produce the documents in question for *in camera* inspection.

16. On November 23, 1971 the defendants noted their appeal of this Court's order of November 12, 1971 enjoining them from issuing a final rule until ten days after this Court's action upon plaintiffs' motion for a preliminary injunction.

17. The defendants submitted two documents pursuant to the Court's order of October 29, 1971 and after inspecting the documents, *in camera*, the Court found that they suggested the possibility of the existence of other documents within the contemplation of the Court's order of October 27, 1971. Accordingly, on December 8, 1971 the Court ordered that a search be made of the defendants' files for any additional documents within the scope of the Court's order and if such documents were found they were to be submitted no later than December 10, 1971 at 4:00 p. m. If no such documents were found the defendants were to report such facts to the Court under oath not later than December 10, 1971 at 4:00 p. m.

18. On December 10, 1971 defendants John A. Volpe, Secretary of Transportation and Douglas W. Toms, Administrator, National Highway Traffic Safety Administration submitted affida-

vits as required. Defendant Volpe's affidavit indicated there were additional documents in the possession of the Department of Transportation which related to an inter-agency *ad hoc* committee formed by the Office of Science and Technology. On December 20, 1971 this Court ordered that these additional documents be produced for *in camera* inspection. The documents were produced and have been inspected by the Court.

19. The documents submitted by the defendants for *in camera* inspection by the Court pursuant to the Court's order of October 29, 1971, as amended, do not constitute petitions for reconsideration of Motor Vehicle Safety Standard No. 208, but are intra-government communications.

20. The documents produced by the defendants for *in camera* inspection by the Court pursuant to the Court's orders of December 8, 1971 and December 20, 1971, do not constitute petitions for reconsideration of Motor Vehicle Safety Standard No. 208, but are working documents, reports and memoranda relating to the studies, deliberations and considerations of an inter-agency *ad hoc* committee formed by the Office of Science and Technology involving costs, technological feasibilities, scientific developments and other matters relating to automotive transportation.

21. The absence of the documents in question does not preclude plaintiffs from exercising their right to participate in the rule making procedures and does not prevent them from effectively commenting upon the proposed rule changes.

*Conclusions of Law*

1. Neither the Motor Vehicle Safety Act nor the Administrative Procedure Act requires that the documents produced by the defendants for in camera inspection pursuant to the Court's orders of October 29, 1971, December 8, 1971 and December 20, 1971 be placed in the public Rules Docket 69–7.

2. The pleadings and evidence in this cause, including the documents examined *in camera*, have failed to establish a substantial likelihood that plaintiffs will prevail on the merits in that it appears that this Court lacks jurisdiction over the subject matter of this litigation.

3. Plaintiffs have not established that failure of the defendants to place the aforementioned documents in the public rules docket will cause them irreparable injury.

4. Plaintiffs have an adequate statutory remedy at law in that judicial review of orders establishing motor vehicle safety standards is provided for persons adversely affected through a proceeding in the appropriate United States Court of Appeals pursuant to Section 1394(a) (1) of the Motor Vehicle Safety Act.

5. Plaintiffs have not established their entitlement to a preliminary injunction.