**Ralph NADER, Esquire, and Center For Auto Safety, Inc., Appellants,**

v.

**John VOLPE, Individually, and as Secretary of the Department of Transportation, et al.**

No. 72–1118.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 17, 1972.

Decided Feb. 17, 1972.

Opinion July 17, 1972.

Mr. Michael N. Sohn, Washington, D. C., with whom Mr. Gerald M. Stern, Washington, D. C., was on the pleadings, for appellants.

Mr. Irwin Goldbloom, Atty., Dept. of Justice, with whom Messrs. L. Patrick Gray, III, Asst. Atty. Gen., at the time the brief was filed and Walter H. Fleischer, Atty., Dept. of Justice, were on the pleadings, for appellees.

Before TAMM, ROBINSON and WIL-KEY, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge.

The National Traffic and Motor Vehicle Safety Act of 1966 [1] directs the Secretary of Transportation to establish federal standards for motor vehicles to meet the need for increased safety on the Nation's highways.[2] On March 3, 1971, pursuant to that mandate, the National Highway Traffic Safety Administration, a unit of the Department of Transportation, issued an order [3] promulgating Motor Vehicle Standard No. 208, which would inaugurate passive occupant restraint systems in automobiles manufactured on and after August 15, 1973.[4] Standard No. 208 requires the installation in 1976 and later models [5] of systems meeting specified performance criteria for the protection of all occupants against all types of crashes.[6] The standard, however, extended to manufacturers an option to provide in 1974 and 1975 models [7] systems affording protection only to front-seat occupants against head-on collisions.[8]

1. 80 Stat. 718, 943 (1966), as amended, 15 U.S.C. § 1391 et seq. (1970).

2. National Traffic and Motor Vehicle Safety Act of 1966 § 103(a), 15 U.S.C. § 1392(a) (1970).

3. Authority to administer portions of the National Traffic and Motor Vehicle Safety Act of 1966 had been delegated to the Administration by the Secretary. See also Automotive Parts & Accessories Ass'n v. Boyd, 132 U.S.App.D.C. 200, 202–203 n. 2, 407 F.2d 330, 332–333 n. 2 (1968).

4. 36 Fed.Reg. 4600 (1971). A passive system is one which provides protection in a crash without any affirmative action by the occupant. An airbag that would inflate automatically upon impact is apparently the system that manufac-turers intend to install to meet this requirement.

5. Vehicles manufactured on and after August 15, 1975. 36 Fed.Reg. 4603, 4604 (1971).

6. Briefly described, this system would protect passengers in all seating positions from serious injury in frontal, angular, lateral and rollover crashes at speeds up to 30 miles per hour. 36 Fed.Reg. 4603–06 (1971).

7. Vehicles manufactured between August 15, 1973, and August 15, 1975. 36 Fed. Reg. 4604 (1971).

8. This less elaborate system would protect unbelted front-seat occupants in head-on crashes up to 30 miles per hour. It would also provide lap belts at all positions to offer users protection in non-

Automakers filed petitions with the Administration for reconsideration of Standard No. 208,[9] and in the Court of Appeals for the Sixth Circuit for judicial review.[10] On September 29, 1971, the Administration, in response to the petitions for reconsideration, issued its Notices 12 and 13 in the proceeding. Notice 12, among other things, acknowledged the Administration's recognition of some merit in manufacturers' protests that there was not enough time to permit the large-scale introduction of passive restraint systems in 1974 model cars, even for just front-seat occupants.[11] Accordingly, Notice 12 stated the Administration's intention to offer manufacturers a third option as to installations in 1974 and 1975 models.[12] Notice 13, in turn, specified as that option front-seat belts with an ignition interlock in lieu of a passive restraint system,[13] and fixed November 2, 1971, as the date by which any comments on the proposed change were to be submitted to the Administration.[14]

Appellants oppose elimination of the minimum requirement of Standard No. 208 that passive restraint systems for front-seat occupants be installed in 1974 and 1975 model automobiles. They complained to the Administration that there were reports, published and unpublished, that just prior to issuance of Notices 12 and 13 personnel in the Office of the President had communicated with the Department and the Administration in support of the manufacturers' effort to ease the interim 1974–75 edict. Appellants endeavored to have the alleged communications made a part of the agency's public docket so that their own comments could be directed in part to what they believed to be political pressure to delay the advent of passivity in occupant protection.

Failing in that effort, appellants filed an action in the District Court on October 18, 1971, approximately three weeks before the deadline for comments on the modification contemplated by the new notices. The action sought a mandatory injunction directing that all written communications between the Office of the President and the Department or the Administration be placed in the public docket, and that memoranda describing all oral communications between them be prepared and likewise placed in the docket. Appellants asserted that unless the docket was so implemented they would not be able to effectively exercise their right to comment on the proposals contained in the notices.

Appellees vigorously resisted appellants' bid for such disclosure. They argued that intra-governmental communications need not be included in an informal rule-making docket, and that appellants had not demonstrated such a likelihood of success on the merits as would justify a preliminary injunction. They pointed to the fact that the administrative record was already under review—as to Standard No. 208—in the Sixth Circuit, and urged that appellants' effort to supplement the record could properly be made only there. Their opposition also included a motion to dismiss appellants' action on the ground

---

frontal crashes, and audible and visible warnings in the event of occupancy of an outside front-seat position without use of the belts. 36 Fed.Reg. 4604 (1971).

9. The point most prominently argued in the petitions was the asserted insufficiency of manufacturers' lead time to implement the passive system requirement for front-seat positions.

10. See National Traffic and Motor Vehicle Safety Act of 1966 § 105, 15 U.S.C. § 1394 (1970). We transferred another petition for review filed in this court to the Sixth Circuit, Automobile Importers

of America v. National Highway Safety Administration, No. 71–1338 (D.C.Cir. July 12, 1971), and all of the cases have been consolidated there. Chrysler Corp. v. Department of Transp., No. 71–1339 (6th Cir.).

11. 36 Fed.Reg. 19254, 19255 (1971).

12. *Id.* at 19255.

13. This system would require front-seat passengers to fasten their seat belts in order for the car to start. 36 Fed.Reg. 19266–67 (1971).

14. 36 Fed.Reg. 19266, 19267 (1971).

that the statutory scheme for judicial review of automotive safety standards deprived the District Court of subject-matter jurisdiction.

The District Court heard argument on appellants' motion for a preliminary injunction on October 28, 1971, just a week before the deadline for comments. The court also conducted an *in camera* examination of a number of documents which it ordered the Administration to produce for that purpose. During the course of the proceedings, the court restrained the issuance of any new regulations based on Notices 12 and 13 until the expiration of ten days from its disposition of the case unless appellants commented in the meantime. By orders entered on January 28, 1972, the motion for preliminary injunction was denied and the complaint was dismissed.[15]

The District Court's order on the motion for preliminary injunction was accompanied by comprehensive findings of fact and conclusions of law.[16] In the court's view, some of the documents submitted for *in camera* inspection were "intra-government communications,"[17] and the others were "working documents, reports and memoranda relating to the studies, deliberations and considerations of an inter-agency *ad hoc* committee . . . involving costs, technological feasibilities, scientific developments and other matters relating to automotive transportation."[18] None of these documents, the court ruled, was required to be included in the administrative docket,[19] and their absence therefrom precluded neither commentary by appellants on the proposed change nor their participation in the rulemaking proceeding.[20] The court further ruled that the statutory procedure for review of Administration orders in an appropriate court of appeals[21] afforded appellants an adequate remedy for their grievances;[22] that appellants had failed to show irreparable injury from the inaccessibility of the communications sought;[23] that appellants had similarly failed to show a substantial probability of ultimately prevailing on the merits because "it appears that this Court lacks jurisdiction over the subject matter of this litigation";[24] and that, in consequence, appellants had not demonstrated their entitlement to a preliminary injunction.[25] And by a separate order reciting its conclusion "that this Court lacks jurisdiction over the subject matter of this action," the court granted appellees' motion to dismiss.[26]

15. Nader v. Volpe, 340 F.Supp. 1178 (D. D.C.1972).

16. Fed.R.Civ.P. 52(a).

17. Nader v. Volpe, *supra* note 15, at 1185.

18. *Id.* at 1185. Obviously these were not the documents appellants desired.

19. *Id.* at 1185.

20. *Id.* at 1185.

21. *Id.* at 1185. See, National Traffic and Motor Vehicle Safety Act of 1966 § 105 (a), 15 U.S.C. § 1394(a) (1970). For pertinent text concerning judicial review, see also notes 27, 28, 44, *infra*.

22. Nader v. Volpe, *supra* note 15, at 1185.

23. *Id.* at 1185.

24. *Id.* at 1185.

25. *Id.* at 1185.

26. Nader v. Volpe, *supra* note 15, Order Dismissing Complaint, Jan. 28, 1972.

Neither in the District Court nor here did appellants invoke the Freedom of Information Act, 80 Stat. 250 (1966), 5 U.S.C. § 552 (1970), as amended, as a basis for gaining access to the documents. Compare Bannercraft Clothing Co., Inc. v. Renegotiation Bd., 151 U.S.App.D.C. ——, 466 F.2d 343 (1972); Sterling Drug, Inc. v. FTC, 146 U.S.App.D.C. 237, 450 F.2d 698 (1971). While we thus have no occasion to consider that legislation, Committee for Nuclear Responsibility, Inc. v. Seaborg, 149 U.S. App.D.C. ——, at ——, 463 F.2d 783 at 788 n. 16 (1971), we note the high unlikelihood that it could have done service here. The District Court found that the documents sought by appellants were "intragovernment communications," see text *supra* at note 17 and notes 17 and 18, *supra*, and the record reveals a formal claim of executive privilege against their production. "Inter-agency . . . memorandums or letters" are exempted from

An appeal to this court was noted from the District Court's orders, and a motion for summary reversal or a further restraint on issuance of a new regulation pending appeal was filed. We granted a temporary stay on February 16, 1972, to permit fuller consideration of the motion, and on the next day heard argument and announced our decision. We denied appellants' motion, vacated our temporary stay, and dismissed the appeal. We also, as a matter of precaution, vacated the District Court's order of dismissal to insure that it would not have any binding effect upon any effort by appellants to again raise the merits-questions they sought to litigate in that court. Our order noted that an opinion would follow as promptly as the business of the court permitted, and we now elucidate the reasons for the action we then took.

## I

The threshold question emerging on appeal was whether the District Court had subject-matter jurisdiction of the suit instituted by appellants. The National Traffic and Motor Vehicle Safety Act entitles any person adversely affected by an order promulgating a safety standard to judicial review in a court of appeals,[27] and authorizes that court to remand the administrative record for supplementation in the event that it is found to be inadequate.[28] Appellants followed, however, not the statutory path by petition in a court of appeals for review with related record supplementation, but a nonstatutory course in a district court for an injunction mandating augmentation of the administrative record while the administrative proceeding was still in progress.

■ The legislative history of the Act is almost completely silent as to the

the provisions of the Freedom of Information Act unless routinely available through discovery by a private party in litigation with the agency. 5 U.S.C. § 552(b)(5) (1970); Sterling Drug, Inc. v. FTC, *supra*, 146 U.S.App.D.C. at 243–244, 450 F.2d at 704–705. As demonstrated by the complex proceedings in the District Court, discovery of the disputed documents in the face of the privilege asserted was far from being a routine matter. See also Carl Zeiss Stiftung v. V. E. B. Carl Zeiss, Jena, 40 F.R.D. 318 (D.D.C.1966), aff'd, sub nom. V. E. B. Carl Zeiss, Jena v. Clark, 128 U.S. App.D.C. 10, 384 F.2d 979, cert. denied, 389 U.S. 952, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967).

27. "In the case of actual controversy as to the validity of any order [establishing federal motor vehicle safety standards], any person who will be adversely affected by such order when it is effective may at any time prior to the sixtieth day after such order is issued file a petition with the United States court of appeals for the circuit wherein such person resides or has his principal place of business, for a judicial review of such order. A copy of the petition shall be forthwith transmitted by the clerk of the court to the Secretary or other officer designated

by him for that purpose. The Secretary thereupon shall file in the court the record of the proceedings on which the Secretary based his order, as provided in section 2112 of title 28 of the United States Code." National Traffic and Motor Vehicle Safety Act of 1966 § 105 (a)(1), 15 U.S.C. § 1394(a)(1) (1970).

28. "If the petitioner applies to the court for leave to adduce additional evidence, and shows to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the proceeding before the Secretary, the court may order such additional evidence (and evidence in rebuttal thereof) to be taken before the Secretary, and to be adduced upon the hearing, in such manner and upon such terms and conditions as to the court may seem proper. The Secretary may modify his findings as to the facts, or make new findings, by reason of the additional evidence so taken, and he shall file such modified or new findings, and his recommendation, if any, for the modification or setting aside of his original order, with the return of such additional evidence." National Traffic and Motor Vehicle Safety Act of 1966 § 105(a)(2), 15 U.S.C. § 1394(a)(2) (1970).

exclusivity or concurrency of the review procedure which it specifies.[29] Generally, however, when Congress has specified a procedure for judicial review of administrative action, courts will not make nonstatutory remedies available without a showing of patent violation of agency authority [30] or manifest infringement of substantial rights irremediable by the statutorily-prescribed method of review,[31]

29. The sole reference to the review provision, found in the report of the Senate Committee on Commerce, is that "[a]ny person who believes himself to be adversely affected by the promulgation of a standard may obtain judicial review, in accordance with section 10 of the Administrative Procedure Act (sec. 105)." S.Rep.No.1301, 89th Cong., 2d Sess. 8 (1966) U.S.Code Cong. & Admin.News, p. 2715. See, however, text *infra* at notes 60–68.

30. See Leedom v. Kyne, 358 U.S. 184, 188, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). *Cf.* Leedom v. International Union of Mine, Mill & Smelter Workers, 352 U.S. 145, 146–148, 77 S.Ct. 154, 1 L.Ed.2d 201 (1956); General Protective Comm. for Holders of Option Warrants of United Corp. v. SEC, 346 U.S. 521, 527–529, 74 S.Ct. 261, 98 L.Ed. 339 (1954); Utah Fuel Co. v. National Bituminous Coal-Comm'n, 306 U.S. 56, 60, 59 S.Ct. 409, 83 L.Ed. 483 (1949); Ford Motor Co. v. NLRB, 305 U.S. 364, 372, 59 S. Ct. 301, 83 L.Ed. 221 (1939); Consolidated Edison Co. of New York v. NLRB, 305 U.S. 197, 231–238, 59 S.Ct. 206, 83 L.Ed. 126 (1938).

31. See Whitney Nat'l Bank in Jefferson Parish v. Bank of New Orleans, 379 U.S. 411, 414–415, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965) (nonstatutory action to restrain Comptroller of the Currency from issuing certificate of authority for new bank disallowed); Pharmaceutical Mfrs. Ass'n v. Gardner, 127 U.S.App.D.C. 103, 381 F.2d 270 (1967) (nonstatutory action for declaratory judgment and injunction to halt pending rulemaking proceeding disallowed); Attorney General v. Bufalino, 125 U.S.App.D.C. 273, 371 F.2d 738 (1966) (nonstatutory action for enforcement of prior order in administrative proceeding disallowed); Local 130, International Union of Elec., Radio and Machine Workers A. F. L.–C. I. O. v. McCulloch, 120 U.S.App.D.C. 196, 345 F.2d 90 (1965) (nonstatutory action to enjoin representative election disallowed); SEC v. R. A. Holman & Co., 116 U.S. App.D.C. 279, 323 F.2d 284 (1963) (nonstatutory action to enjoin pending administrative proceeding for alleged disqualification of some commission members disallowed); Miles Laboratories v. FTC, 78 U.S.App.D.C. 326, 140 F.2d 683 (1944) (nonstatutory action for declarations as to agency's power to request stipulation or to issue complaint disallowed); McFadden Publications v. FTC, 59 App. D.C. 192, 37 F.2d 822 (1930) (nonstatutory action for mandamus to compel agency's issuance of subpoenas duces tecum disallowed); Herald Co. v. Vincent, 392 F.2d 354 (2d Cir. 1968) (nonstatutory action to enjoin representative election disallowed); Thompson Prods. v. NLRB, 133 F.2d 637, 639, 640 (6th Cir. 1943) (nonstatutory petition for writ of prohibition against holding of administrative hearings disallowed); R. H. Macy & Co. v. Tinley, 249 F.Supp. 778, 779, 781–783 (D.D.C.1966) (nonstatutory action for declaratory judgment premised on agency's refusal to issue subpoenas disallowed); Sperry & Hutchinson Co. v. FTC, 256 F.Supp. 136, 140–142 (S.D. N.Y.1966) (nonstatutory action for declaratory judgment and injunction to restrain initial hearings in adjudicative proceeding before agency disallowed); Union Bag-Camp Paper Corp. v. FTC, 233 F.Supp. 660 (S.D.N.Y.1964). (nonstatutory action to compel agency to produce documents disallowed).

The rule stated in text is generally recognized even in instances where resort to a nonstatutory remedy is upheld. *E. g.*, Abbott Laboratories v. Gardner, 387 U.S. 136, 139–148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967) (nonstatutory action for declaratory judgment and injunction against enforcement of labeling and advertisement regulation promulgated in excess of statutory authority allowed); Independent Brokers-Dealers' Trade Ass'n v. SEC, 142 U.S.App.D.C. 384, 389–395, 442 F.2d 132, 137–143, cert. denied, 404 U.S. 828, 92 S.Ct. 63, 30 L.Ed.2d 57 (1971) (nonstatutory action for declaratory judgment and injunction to enjoin abolishment of customer-directed give-ups of brokerage fees allowed); Elmo Div. of Drive-X Co. v. Dixon, 121 U.S.App. D.C. 113, 115, 116, 348 F.2d 342, 344, 345 (1965) (nonstatutory action for declaratory judgment and injunction to restrain agency from continuing with complaint proceeding allowed); Amos Treat & Co. v. SEC, 113 U.S.App.D.C. 100, 101–102, 105, 306 F.2d 260, 261–262, 265 (1962) (nonstatutory action to enjoin agency from prosecuting revocation proceeding allowed).

and this is so for a number of reasons. Respect for "administrative autonomy"[32] derived from the grant of administrative jurisdiction [33] demands "the avoidance of premature interruption of the administrative process." [34] Administrative expertise and discretion should first be brought to bear upon problems—ofttimes specialized and complex—which are committed to the agency for initial solution,[35] and in any event "it is normally desirable to let the agency develop the necessary factual background upon which decisions should be based." [36] The implicit legislative concept of separateness in the functioning of agencies and courts is ill served by improvident judicial interference in ongoing administrative proceedings.[37]

Equally important is the conservation of administrative and judicial energies, which only close adherence to the concept of functional separateness can promote. Surely "it is generally more efficient for the administrative process to go forward without interruption than it is to permit the parties to seek aid from the courts at various intermediate stages." [38] Moreover, absent imperative need to correct erroneous agency action immediately, transgressions encountered during agency proceedings can ordinarily be rectified in the regular course of review.[39] Indeed, prior to final administrative action parties cannot be certain that they will be aggrieved,[40] and "only upon completion of the [administrative] proceedings can any meaningful evaluation of the effect of the supposed irregularities be made." [41] Furthermore, departures from statutory modes of judicial review may well

. . . result in unnecessary duplication and conflicting litigation. Some opponents might participate before the [agency]; others might well wait for termination of the [agency's] activities and then sue in the district courts for

32. McKart v. United States, 395 U.S. 185, 193, 194, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969).

33. See *id.* at 193–194, 89 S.Ct. 1657.

34. *Id.* at 193, 89 S.Ct. at 1662.

35. *Id.* at 194, 89 S.Ct. 1657.

36. *Id.* "Particularly, judicial review may be hindered by the failure of the litigant to allow the agency to make a factual record, or to exercise its discretion or apply its expertise." *Id.*

37. In addition to other considerations, "notions of administrative autonomy require that the agency be given a chance to discover and correct its own errors", and "it is possible that frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures." *Id.* at 195, 89 S.Ct. at 1663.

38. *Id.* at 194, 89 S.Ct. at 1663.

39. See FTC v. Dean Foods Co., 384 U.S. 597, 603–612, 86 S.Ct. 1738, 16 L.Ed.2d 802 (1966); Whitney Nat'l Bank v. Bank of New Orleans, *supra* note 31, 358 U.S. at 423, 426, 85 S.Ct. 551; Consolidated Edison Co. of New York v. NLRB, *supra* note 30, 305 U.S. at 226, 59 S.Ct. 206; FTC v. Cinderella Career & Finishing Schools, 131 U.S.App.D.C. 331, 339, 404 F.2d 1308, 1316 (1968); Attorney General v. Bufalino, *supra* note 31, 125 U.S. App.D.C. at 275, 371 F.2d at 740; Texaco, Inc. v. FPC, 117 U.S.App.D.C. 268, 272, 329 F.2d 223, 227, cert. denied, 375 U.S. 941, 84 S.Ct. 346, 11 L.Ed.2d 272 (1963); SEC v. R. A. Holman & Co., *supra* note 31, 116 U.S.App.D.C. at 282, 323 F.2d at 287; Miles Laboratories v. FTC, *supra* note 31, 78 U.S.App.D.C. at 327–328, 140 F.2d at 684–685; Fashion Originators Guild of America v. FTC, 114 F.2d 80, 83 (2d Cir. 1940), aff'd, 312 U.S. 457, 668, 61 S.Ct. 703, 85 L. Ed. 949 (1941); Texaco, Inc., v. FTC, 301 F.2d 662, 663 (5th Cir. 1962); E. B. Muller & Co. v. FTC, 142 F.2d 511, 519 (6th Cir. 1944); Chamber of Commerce of Minneapolis v. FTC, 280 F. 45, 46–47, 48 (8th Cir. 1922).

40. McKart v. United States, *supra* note 32, 395 U.S. at 195, 89 S.Ct. 1657. See also Bristol-Myers Co. v. FTC, 138 U.S. App.D.C. 22, 27, 424 F.2d 935, 940 (1970).

41. Frito-Lay, Inc. v. FTC, 380 F.2d 8, 10 (5th Cir. 1967). See also McKart v. United States, *supra* note 32, 395 U.S. at 193–194, 89 S.Ct. 1657; Whitney Nat'l Bank v. Bank of New Orleans, *supra* note 31, 379 U.S. at 421, 85 S.Ct. 551.

an injunction accomplishing the same ultimate end. The different records, applications of different standards and conflicting determinations that would surely result from such duplicative procedures all militate in favor of the conclusion that the statutory steps provided in the [governing] [a]ct are exclusive.[42]

These considerations argue as forcefully against piecemeal view of administrative action as they do against appellate review of interlocutory judicial action.[43] They dictate that judicial intervention in uncompleted administrative proceedings, as distinguished from judicial checking by statutorily-established method of review, must remain very much the exeception rather than the rule. Not only do they lie at the very foundation of the settled rule that administrative remedies must be fully exhausted prior to resort to the courts,[44] but in cases like the present they also assert themselves powerfully against jurisdiction of the courts while the administrative process is continuing. As the Supreme Court has declared, when Congress "has enacted a specific statutory scheme for obtaining review, . .

the doctrine of exhaustion of administrative remedies comes into play and requires that the statutory mode of review be adhered to notwithstanding the absence of an express statutory command of exclusiveness." [45] That, we think, is the inevitable result here.

## II

■ There can be no doubt as to the route which tests of administrative proceedings under the National Traffic and Motor Vehicle Safety Act of 1966 must normally pursue. That route, as we have mentioned, is a petition to a court of appeals for review of the action complained of.[46] Statutory review schemes such as this, it is generally conceded, have their genesis in the Federal Trade Commission Act,[47] which perhaps germinated the modern trend from common law remedies in district courts to petitions in courts of appeals as the favored vehicles for judicial review.[48] More than two decades ago, Congress described the petition-for-review mechanism as the "more modern . . . and generally . . . the best method for the review of orders of the administra-

42. Whitney Nat'l Bank v. Bank of New Orleans, *supra* note 31, 379 U.S. at 422, 85 S.Ct. at 558. See also cases cited *supra* note 39.

43. See McKart v. United States, *supra* note 32, 395 U.S. at 194, 89 S.Ct. 1657; DiBella v. United States, 369 U.S. 121, 124, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962); Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50–51, 58 S.Ct. 459, 82 L. Ed. 638 (1938); Frito-Lay, Inc. v. FTC, *supra* note 41, 380 F.2d at 10; Attorney General v. Bufalino, *supra* note 31, 125 U.S.App.D.C. at 275, 371 F.2d at 740.

44. See generally 3 K. Davis, Administrative Law §§ 20.01 et seq. (1958); L. Jaffe, Judicial Control of Administrative Actions 424–58 (1965).

45. Whitney Nat'l Bank v. Bank of New Orleans, *supra* note 31, 379 U.S. at 422, 85 S.Ct. at 558. See also, McKart v. United States, *supra* note 32, 395 U.S. at 193, 89 S.Ct. 1657; Boire v. Greyhound Corp., 376 U.S. 473, 476–482, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964); NLRB

v. Donnelly Garment Co., 330 U.S. 219, 233–238, 67 S.Ct. 756, 91 L.Ed. 854 (1947); Consolidated Edison Co. of New York v. NLRB, *supra* note 30, 305 U.S. at 223–228, 59 S.Ct. 206 (1938); Texaco, Inc. v. FPC, *supra* note 39, 117 U. S.App.D.C. at 271–273, 329 F.2d at 226–228; SEC v. R. A. Holman & Co., *supra* note 31, 116 U.S.App.D.C. at 282, 283, 323 F.2d at 286, 287; Texaco, Inc. v. FTC, *supra* note 39, 301 F.2d at 663; Inland Container Corp. v. NLRB, 137 F.2d 642, 643–644 (6th Cir. 1943); Cupples Company Mfrs. v. NLRB, 103 F.2d 953, 956–958 (8th Cir. 1939).

46. 38 Stat. 717 (1914). See text *supra* at notes 27–28.

47. See generally 3 K. Davis, Administrative Law § 32.03 (1958). See also Texaco, Inc. v. FPC, *supra* note 39, 117 U.S. App.D.C. at 273, 329 F.2d at 228; and cases cited *supra* note 39. Compare Judicial Review Act of 1950, 64 Stat. 1129 (1950), 28 U.S.C. § 2341 et seq. (1970).

48. See 3 K. Davis, Administrative Law § 23.03 at 302–03 (1958).

tive agencies," [49] and since then it has consistently emerged às the congressional choice.[50] So too in the passage of the National Traffic and Motor Vehicle Safety Act of 1966 did Congress signify a similar preference, and courts are bound to give that manifestation the respect it commands.

The Act before us also provides, moreover, that the court in which a petition for review is filed "shall have jurisdiction to review the [agency's] order in accordance with section 10 of the Administrative Procedure Act. . . ."[51] Section 10, in turn, makes two stipulations bearing importantly on this litigation. It limits "[t]he form of proceeding for judicial review" to the "special statutory review proceeding relevant to the subject matter in [a] court specified by statute" unless that proceeding would be inadequate.[52] It also defers review of "[any] preliminary, procedural, or intermediate agency action or ruling not directly reviewable" until "review of the final agency action."[53] We think it clear that, no less than is generally the case, judicial review under the Act is to occur in the form and in the forum the Act specifies in the absence of extraordinary circumstances.

## III

■ There are, to be sure, exceptional situations in which a litigant has been permitted to invoke the equitable powers of a district court to preserve a substantial right from irretrievable subversion in an administrative proceeding,[54] but the case at bar is hardly such a situation. An agency's refusal to accede to a party's demands for production of infor-

49. H.Rep.No.2122, 81st Cong., 2d Sess. 4 (1950), addressing the Judicial Review Act of 1950, 64 Stat. 1129 (1950), 28 U.S.C. § 2241 et seq. (1970).

50. See 3 K. Davis, Administrative Law § 23.03 at 302–03 (1958).

51. "Upon the filing of the petition referred to in paragraph (1) of this subsection, the court shall have jurisdiction to review the order in accordance with section 10 of the Administrative Procedure Act . . . and to grant appropriate relief as provided in such section." National Traffic and Motor Vehicle Safety Act of 1966 § 105(a)(3), 15 U.S.C. § 1394 (a)(3) (1970).

52. "Except so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion . . . . [t]he form of proceeding for judicial review shall be any special statutory review proceeding relevant to the subject matter in any court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action (including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus) in any court of competent jurisdiction. Agency action shall be subject to judicial review in civil or criminal proceedings for judicial enforcement except to the extent that prior, adequate, and exclusive opportunity for such review is provided by law." Administrative Procedure Act § 10(b), 5 U.S. C. § 703 (1970).

53. With the exceptions applicable to Section 10 generally, see note 52, supra, "[e]very agency action made reviewable by statute and every final agency action for which there is no other adequate remedy in any court shall be subject to judicial review. Any preliminary, procedural, or intermediate agency action or ruling not directly reviewable shall be subject to review upon the reviw of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final shall be final for the purposes of this subsection whether or not there has been presented or determined any application for a declaratory order, for any form of reconsideration, or (unless the agency otherwise requires by rule and provides that the action meanwhile shall be inoperative) for an appeal to superior agency authority." Administrative Procedure Act § 10(c), 5 U.S.C. § 704 (1970).

54. Abbott Laboratories v. Gardner, supra note 31, 387 U.S. at 138–148, 87 S.Ct. 1507, 18 L.Ed.2d 681; Independent Brokers-Dealers' Trade Ass'n v. SEC, supra note 31, 142 U.S.App.D.C. at 389–395, 442 F.2d at 137–143; Elmo Div. of Drive-X Co. v. Dixon, supra note 31, 121 U.S.App.D.C. at 118, 348 F.2d at 347; Amos Treat & Co. v. SEC, supra note 31, 113 U.S.App.D.C. at 105, 306 F.2d at 265. See also cases cited supra note 30.

mation in pending proceedings is not ordinarily subject to immediate judicial revision,[55] and we are not persuaded that the conditions appearing here make for a different result.

Appellants lay claim to communications from the Office of the President to the Administration as a *sine qua non* of efficacious comment on the proposed relaxation of Standard No. 208, and to the processes of the District Court as the only hope for judicial redress in time to enable meaningful comment. They argue that any attempt to gain access to the communications by way of judicial review of a new regulation emanating from Notices 12 and 13 is apt to require so long a period as to leave the Administration insufficient time to reconsider the contemplated postponement of Standard No. 208's criteria for the 1974 and 1975 model years.[56] On analysis, however, these premises are no more acceptable to us than they were to the District Court.[57]

Comment on the proposed change unrelated to the communications obviously could have been offered by appellants without further ado. Comments based on the communications could be presented were any production of them directed in a statutory review of the forthcoming order, and the Administration would not be immune to an instruction to reconsider its action in light thereof. Beyond that, the timeliness of comment addressed to the communications derived no signifi-

cantly greater assurance from a nonstatutory proceeding in a district court than one initiated under the Act in a court of appeals.

Appellants filed their action in the District Court just three weeks before the deadline for comments on the changes envisioned by Notices 12 and 13. The time for promulgation of an order pursuant to those notices became administratively ripe on November 2, 1971, when that deadline passed. The stay, however, which appellants themselves obtained in the District Court precluded issuance of any such order prior to February 7, 1972. In these circumstances, appellants are hardly in position to argue from an assumption that an order would not have emitted promptly. Indeed, appellees have represented to this court that but for the stay an order would have issued in early November— very shortly after suit in the District Court was instituted. That representation stands unchallenged by appellants, and we have no reason whatever to question it.

■ Nor do we perceive any basis for a firm belief that a district court action could lead to possible relief for appellants on the merits of their claim faster than a statutory proceeding in a court of appeals. Had appellants pursued the latter, they would in all probability have wound up in the Court of Appeals for the Sixth Circuit,[58] wherein cognate litigation was

55. Consolidated Edison Co. of New York v. NLRB, *supra* note 30, 305 U.S. at 226, 59 S.Ct. 206, 83 L.Ed. 126; Texaco, Inc. v. FTC, *supra* note 39, 301 F.2d at 663; Sperry & Hutchinson Co. v. FTC, *supra* note 31, 256 F.Supp. at 140; R. H. Macy & Co. v. Tinley, *supra* note 31, 249 F. Supp. at 783; Indiana & Michigan Elec. Co. v. FPC, 224 F.Supp. 166 (N.D. Ind.1963). And in Texaco Inc. v. FPC, *supra* note 39, 117 U.S.App.D.C. at 271, 329 F.2d at 226, we held flatly that the appropriate time to seek "leave to adduce additional evidence" is "when a party petitions a court of appeals to review a final order . . . ." Of course, the Freedom of Information Act, 80 Stat. 250 (1966), 5 U.S.C. § 552(a) (3) (1970), as amended carves out an exception to the state-

ment in text in situations to which it applies. *See, e. g.,* Bannercraft Clothing Co., Inc. v. Renegotiation Bd., *supra* note 26; Sterling Drug, Inc. v. FTC, *supra* note 26. But see note 26, *supra.*

56. As we have indicated, see note 9, *supra,* the installation of complex safety equipment requires considerable lead time notice to auto manufacturers.

57. Nader v. Volpe, *supra* note 15, at 1185.

58. We realize that appellants—an individual residing and a corporation with its principal office in the District of Columbia—do not meet the venue prerequisites to petition for review in the Sixth Circuit. See note 27, *supra.* But once an order on Notices 12 and 13 issued, they could either seek intervention in the liti-

pending and already had been set for expedited consideration. In contrast, their suit in the District Court, despite earmarks of diligence by all concerned, spanned a period of three and a half months, and reached its terminus while still in its preliminary stages.[59] We cannot conclude confidently that the course appellants took held out greater promise of an opportunity for timely comment than the course charted by the Act. And it goes without saying that the mere speculative possibility that appellants might have saved some time by proceeding as they did suffices to summon the District Court to a jurisdictional exercise.

We are mindful of the provision of the Act that "[t]he remedies provided for . . . shall be in addition to and not in substitution for any other remedies provided by law."[60] Unlike appellants,

however, we do not construe that provision as a license to resort to nonstatutory remedies in the District Court in the circumstances of this case. Such a construction would not only remove judicial review under the Act from the mainstream of jurisprudence,[61] but would also wage war with the Act's explicit reference to Section 10 of the Administrative Procedure Act[62] and that section's restriction on utilization of nonstatutory remedies to instances where the statutory procedure for review would be inadequate.[63] We interpret the quoted language as a reservation—fully consistent with current doctrine,[64] which Section 10 incorporates[65]—of nonstatutory remedies to instances of agency action which is *ultra vires* or damaging beyond the capability of the statutory procedure to repair.[66] As we have said,[67] we do not consider the case at bar exceptional in that sense.[68]

gation pending there, see Fed.R.App.P. 15(d), or file a petition for review in this court which undoubtedly would be transferred to the Sixth Circuit, see 28 U.S.C. § 2112(a) (1970), in the interest of conserving judicial resources and avoiding possible conflicting decisions as well as for the convenience of those already litigants. See Valley Vision, Inc. v. FCC, 127 U.S.App.D.C. 291, 292, 383 F.2d 218, 219 (1967); International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW–A.F.L.–C.I.O. v. NLRB, 126 U.S. App.D.C. 11, 14, 373 F.2d 671, 674 (1967); Eastern Air Lines, Inc. v. CAB, 122 U.S.App.D.C. 375, 378–379, 354 F.2d 507, 510–511 (1965); Hilton Hotels Corp. v. Weaver, 117 U.S.App.D.C. 83, 325 F.2d 1010 (1963), cert. denied, 376 U.S. 951, 84 S.Ct. 968, 11 L.Ed.2d 971 (1964); Mann Mfg., Inc. v. Hortex, 439 F.2d 403, 408 (5th Cir. 1971); Arthur Kahn Co. v. Switzer Bros., 201 F.2d 55 (6th Cir. 1953); Florida v. United States, 285 F.2d 596, 604 (8th Cir. 1960).

59. The action terminated upon the grant of appellees' motion to dismiss. But for that ruling, it would have remained pending for proceedings on appellants' demand for a permanent injunction, and we are in no position to estimate their duration. There was also the attack by this appeal on the ruling on preliminary injunction which, save for our dismissal, we would have had to address and decide.

60. National Traffic and Motor Vehicle Safety Act of 1966 § 105(a)(6), 15 U.S.C. § 1394(a)(6) (1970).

61. See cases cited *supra* notes 46–53.

62. See notes 51–53, *supra*, and accompanying text.

63. See note 52, *supra*, and accompanying text.

64. See note 53, *supra*, and accompanying text.

65. See notes 51–53, *supra*, and accompanying text. As we have noted, Section 10 (b) of the Administrative Procedure Act requires utilization of the specified statutory review procedures "in [a] court specified by statute," and authorizes resort to nonstatutory remedies only "in the absence or inadequacy" of statutory review procedures. See note 52, *supra*.

66. See notes 30, 39 and 52, *supra*, and accompanying text. It also accommodates the remedy provided by the Freedom of Information Act, 80 Stat. 250 (1966), 5 U.S.C. § 552 (1970), as amended, where that legislation is applicable.

67. See text *supra* at note 53.

68. We also consider Abbott Laboratories v. Gardner, *supra* note 31, upon which appellants rely, inapposite. The issues in *Abbott* were whether pre-enforcement review of regulations of the Commissioner of Food and Drugs could be sought in a

Our conclusion, then, is that the case did not present such circumstances as would exempt appellants from the need to pursue the statutory method of judicial review. The District Court had but limited jurisdiction of the case at the outset—for the purpose of taking a peek to see whether it had jurisdiction of the subject matter by virtue of exceptional circumstances. When it found no such circumstances it rightly dismissed the action for lack of subject-matter jurisdiction.[69] It so happened that by the time the District Court reached that point, it was also prepared to rule on appellants' motion for a preliminary injunction, and for reasons already summarized it also denied the motion.[70] The dismissal, by our lights, was eminently correct, and that is as much as we need decide.

■■ Our view of the case obviously foreclosed a grant of summary reversal to appellants on the merits, and with no occasion to consider the validity of the District Court's ruling on the motion for injunction, we dissolved our stay and dismissed the appeal. We realized, too, that appellants might wish to pursue their litigative objectives in the Sixth Circuit,[71] and to free them from potential embarrassment by any claim of res

judicata or collateral estoppel, we also vacated the District Court's order of dismissal.[72] And now, with this explanation of the basis for our own action, we ring down the curtain on this appeal.

district court and whether the particular suit therefore presented a controversy ripe for judicial determination. The Court concluded affirmatively on each but, unlike appellants' effort here, review was there sought of final agency action—the fully-promulgated regulations—and, unlike the statutory scheme here, there was no special statutory review procedure applicable to those regulations. In the case at bar, on the other hand, review of nonfinal agency action was attempted in a nonstatutory proceeding in circumstances where the statutory mode of review would have served adequately.

69. Nader v. Volpe, *supra* note 15.

70. *Supra* note 15, at 1185.

71. See text *supra* following note 26.

72. The District Court's dismissal ruling implicitly incorporated the facts contributing to the conclusion that appellants' case was not exceptional. That ruling may also have borrowed from the court's

statement of findings and conclusions in reference to the motion for preliminary injunction. Any trouble appellants could conceivably encounter in future efforts to relitigate the merits issues they tendered to the District Court is negated by vacation of the dismissal order. *Cf.* United States v. Munsingwear, Inc., 340 U.S. 36, 39–40, 71 S.Ct. 104, 95 L.Ed. 36 (1950). Nothing beyond dismissal of the appeal was necessary with regard to the findings and conclusions on the preliminary injunction motion since they are not binding on the merits in further proceedings. See Industrial Bank of Washington v. Tobriner, 132 U.S.App.D.C. 51, 53–54, 405 F.2d 1321, 1323–1324 (1968); Cone v. Rorick, 112 F.2d 894, 896 (5th Cir. 1940); Mytinger & Casselberry, Inc. v. Numanna Laboratories Corp., 215 F.2d 382, 384 (7th Cir. 1954); Chicago, B. & Q. R.R. v. Chicago Great Western R.R., 190 F.2d 361, 363–364 (8th Cir. 1951). *Cf.* Toregas v. Susser, 110 U.S.App.D.C. 177, 290 F.2d 368 (1961).