ASSOCIATION OF NATIONAL ADVERTISERS, INC., Appellant,

v.

FEDERAL TRADE COMMISSION et al.

KELLOGG COMPANY, a corporation, Appellant,

v.

FEDERAL TRADE COMMISSION et al.

CHOCOLATE MANUFACTURERS ASSOCIATION OF the UNITED STATES OF AMERICA, INC., Appellant,

v.

FEDERAL TRADE COMMISSION.

TOY MANUFACTURERS OF AMERICA, INC., Appellant,

v.

FEDERAL TRADE COMMISSION et al.

Nos. 79–1030 to 79–1033.

United States Court of Appeals, District of Columbia Circuit.

Argued March 5, 1979.

Decided Oct. 2, 1979.

Gilbert H. Weil, New York City, with whom Stephen A. Weitzman, Washington, D. C., was on brief, for appellants in No. 79–1030.

James H. Wallace, Jr., Washington, D. C., for appellant in No. 79–1032.

Frederick P. Furth, San Francisco, Cal., a member of the bar of the Supreme Court, pro hac vice, by special leave of court, with whom Samuel H. Seymour and Earl C. Dudley, Jr., Washington, D. C., were on brief, for appellant in No. 79–1031.

Richard Gimer, Washington, D. C., was on brief, for appellant in No. 79–1033.

Gerald P. Norton, Deputy Gen. Counsel, F. T. C., Washington, D. C., with whom Michael N. Sohn, Gen. Counsel, David M. Fitzgerald, Atty., F. T. C., Barbara Allen Babcock, Asst. Atty. Gen., Dept. of Justice, Earl J. Silbert, U. S. Atty., Robert E. Kopp and Neil H. Koslowe, Attys., Dept. of Justice, Washington, D. C., were on brief, for appellees.

Before WRIGHT, Chief Judge, and MacKINNON and WILKEY, Circuit Judges.

Opinion for the Court filed by Circuit Judge MacKINNON.

Concurring opinion filed by Chief Judge J. SKELLY WRIGHT.

MacKINNON, Circuit Judge:

Acting on what might be mildly described as a provocative staff report, the Federal Trade Commission decided in April 1978 to initiate hearings on a proposed rule to circumscribe the content of television advertising that is seen by or directed at children. The Commission published in the Federal

Register a Notice of Proposed Rulemaking that announced both this undertaking and a special set of rules to govern the rulemaking. These special rules were drafted to apply *only* to the children's advertising proceeding and significantly differ from the rules the Commission uses in other trade regulation rulemakings.

In September, a group of advertisers and trade associations filed suit in federal district court seeking interlocutory review of the special rules. They alleged that the Commission had not complied with the notice and comment provisions of the Administrative Procedure Act in the promulgation of the special rules, and that one of the new rules, which requires participating parties to produce studies and surveys in their custody pertaining to the issue of children's advertising, lacks statutory authority and otherwise offends statutory and constitutional guarantees. In addition, the advertisers and trade associations complained that a preexisting Commission rule, one prohibiting communications between Commissioners and outside parties while sanctioning *sub silentio* similar communications between Commissioners and members of the Commission's general staff, violates the rights assured them by statute and the due process clause.

In November, the district court granted the Commission's motion for summary judgment. The district court held that the assaults on the Commission's rules were premature. Despite some misgivings, we affirm.

## I. BACKGROUND

### A. *The Magnuson-Moss Act*

In January 1975 Congress amended the Federal Trade Commission Act to add a new section 18. The Magnuson-Moss Warranty—Federal Trade Commission Improvement Act, Pub.L. No. 93–637, § 202, 88 Stat. 2193 (1975) (codified at 15 U.S.C. § 57a (1976)). Section 18 empowers the Commission to issue trade regulation rules specifically defining acts and practices that are unfair or deceptive within the meaning of section 5 of the Commission's organic statute.[1] 15 U.S.C. § 57a(a)(1)(B) (1976). However, under the Act, the Commission cannot exercise this power through conventional rulemaking processes, for interwoven with the statutory delegation of quasi-legislative power are quasi-adjudicative procedures the Commission must follow in developing standards to govern the behavior of private parties. These procedural provisions grant unusually broad rights of public participation in agency rulemaking, and they substantially restrict the Commission's power to fashion its policy concerns into legally binding rules.

The statute directs that in undertaking to decide whether to promulgate a trade regulation rule the Commission must first publish a notice of proposed rulemaking stating with particularity the reasons for the proposed rule and inviting interested persons to submit written data, views, and arguments. *Id.* § 57a(b). The Commission must then conduct an informal hearing at which any interested person can present his position orally or by documentary submission or both, subject to such Commission rules as may tend to avoid unnecessary costs and delay. *Id.* § 57a(c). If the Commission determines that it must resolve disputed issues of material fact necessary to fair decisionmaking on the record as a whole,

1. Section 5 provides in part:
   Declaration of unlawfulness; power to prohibit unfair practices
   (a)(1) Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful.
   (2) The Commission is empowered and directed to prevent persons, partnerships, or corporations, except banks, common carriers subject to the Acts to regulate commerce, air carriers and foreign air carriers subject to the Federal Aviation Act of 1958 [49 U.S.C. 1301 et seq.], and persons, partnerships, or corporations insofar as they are subject to the Packers and Stockyards Act, 1921, as amended [7 U.S.C. 181 et seq.], except as provided in section 406(b) of said Act [7 U.S.C. 227(a)], from using unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce.
   15 U.S.C. § 45(a) (1976).

section 18 entitles interested persons to offer such rebuttal submissions or to conduct (or to have the Commission conduct) such cross-examination of witnesses as the Commission deems appropriate and necessary for a full and true disclosure of facts pertinent to the disputed issues. *Id.* If the Commission thereafter elects to promulgate a trade regulation rule, interested persons can seek judicial review of the rule immediately upon its issuance.

On such review, section 18 authorizes a court of appeals to set aside a trade regulation rule if the rule is not supported by substantial evidence found in the rulemaking record taken as a whole,[2] or if a Commission rule or ruling limiting an interested person's right to cross-examine or to submit rebuttal statements has precluded disclosure of disputed facts necessary to a fair determination in the rulemaking. *Id.* § 57a(e). In this as in other respects, section 18 supplements rather than displaces the Administrative Procedure Act. For instance, an appellate court can also set aside a trade regulation rule if the Commission promulgates it without observance of the procedure required by law. *Id.*; *see* 5 U.S.C. § 706(2)(D) (1976).

Section 18 is an uncommon statute because it both delegates a rulemaking power and carefully and in unusual detail prescribes the manner in which that power is to be exercised. Section 18 also differs from most provisions authorizing rulemaking in being a codification of the hybrid approach between adjudication and rulemaking in the development of legally binding rules. As the term is normally used, an adjudication refers to the application of a pre-existing legal standard to a well-defined set of controverted facts to determine whether a particular person or group of persons should receive a benefit or penalty. An adjudication, with its attendant procedures, only serves its purpose if the facts are fully aired and accurately resolved. Rulemaking, by contrast, normally refers to the prospective allocation of benefits and penalties according to a specific standard that reflects the policy choice of the rulemaker. The rulemaking serves its purpose if the rulemaker arrives at a reasonable policy choice that adequately guides future conduct. Under section 18's hybrid scheme, the Commission must apply a pre-existing legal standard to the set of controverted facts necessary to a determination whether the prospective allocation of benefits and penalties is an appropriate policy choice. A section 18 proceeding only serves its purpose if the material facts are fully aired and accurately resolved *and* the Commission arrives at a reasonable policy choice that adequately guides future conduct. The sufficiency of the record in a proceeding of this kind and the validity of the rule it purports to support are directly and substantively correlated to the procedural devices the Commission employs. And while the Commission is authorized to adopt additional procedural devices to avoid unnecessary costs and delay, it is not entitled to transform Congress' careful mixture in section 18 into the more restrictive procedures used by other federal agencies.

Immediately after enactment of section 18 in 1975, the Commission published a Notice of Proposed Rulemaking in the Federal Register inviting comments on proposed rules for the conduct of section 18 proceedings. 40 Fed.Reg. 15237 (1975). This Notice explained that the proposals were designed to implement section 18's rights and obligations. Following the comment period, the Commission formally promulgated the rules, somewhat altering its proposals on the basis of the comments it had received.[3]

---

**2.** Section 18 defines the rulemaking record to mean "the rule, its statement of basis and purpose, the transcript [of any oral presentation and cross-examination at the informal hearing], any written submissions, and any other information which the Commission considers relevant to such rule." 15 U.S.C. § 57a(e)(1)(B) (1976).

**3.** The Commission did not solicit comment on those of the 1975 rules that merely repeated the language of section 18 or that explained how a rulemaking might be initiated. *See* 16 C.F.R. § 1.7–.10 (1978). The Commission solicited comment on the rest. *See* Fed.Reg. 15237, 33966 (1975). The Commission made the rules

The Commission adhered to these 1975 rules, together with amendments it subsequently issued,[4] until the outset of the children's advertising proceeding.

### B. The Special Rules for the Children's Advertising Proceeding

Presaging the children's advertising proceeding was the publication in February 1978 of a Commission staff report that advocated, among other things, a complete ban on certain television advertising seen by or directed at children.[5] Two months later, the Commission published the Notice of Proposed Rulemaking that inaugurated its inquiry into children's advertising and promulgated without opportunity for comment the special set of rules to govern the inquiry. 43 Fed.Reg. 17967 (1978). Describing the special rules as an "experiment," *id.* at 17968, the Commission explained that they would only apply to the children's advertising proceeding, not to any other trade regulation rulemaking the Commission might later instigate.

The Commission's special rules, which became effective upon publication, vary in noteworthy respects from the 1975 rules. The special rules provide that during the initial comment period interested persons can submit statements on "any issue of fact, law or policy which may have some bearing on the proposed rule." *Id.* at 17969. Following the comment period, the Commission will conduct what it labels a "legislative hearing."[6] *Id.* at 17970. Interested persons wishing to testify at this proceeding have to submit a verbatim copy of their proposed testimony to the Commission within the comment period. *Id.* In addition, under Section D(2) of the children's advertising Notice:[7]

> Any person who seeks to present information either orally or in writing, shall present any studies or surveys in their possession, custody or control of the person or the organization he represents or is otherwise compensated in connection with this proceeding which support, contradict or otherwise pertain to the person's presentation. This need not include information submitted by any other person or information which is publicly available.

*Id.* at 17971. This Section D(2)(e) requirement operates as an unrestricted subpoena and amounts to an admission ticket to the event. It is intentionally aimed at and directly conditions the rights of parties to participate in the proceeding, for any persons who want to participate, including those whose past conduct will be subjected

---

effective one week after final publication. *Id.* at 33966.

**4.** In September 1977, acting under the presumed compulsion of this court's decision in *Home Box Office, Inc. v. FCC*, 185 U.S.App. D.C. 142, 567 F.2d 9 (D.C.Cir.), *cert. denied*, 434 U.S. 829, 98 S.Ct. 111, 54 L.Ed.2d 89 (1977), the Commission invited comment on a rule proscribing communications between Commissioners and persons *outside* the agency during a rulemaking proceeding. 42 Fed.Reg. 43974 (1977). In November, taking note of the comments of interested persons, the Commission published a rule to that effect. *Id.* at 60562 (codified at 16 C.F.R. § 1.18 (1978)); *see* pp. 10–11 *infra*.

**5.** Commission rules provides that rulemakings may be commenced by the Commission either on its own initiative or pursuant to a written petition filed by an interested person. 16 C.F.R. § 1.9 (1978). According to the children's advertising Notice, petitions filed in April 1977 by two groups (Action for Children's Advertising and the Center for Science in the Public

Interest) provoked the staff investigation culminating in the report issued in February 1978.

**6.** The Commission stated at oral argument that it was then engaged in the process of conducting the legislative-type hearing.

**7.** Apparently owing to the trial court's comments expressing reservations about the lawfulness of this requirement, see J.A. at 138–39, 145, the Commission revised it last January, *id.* at 165. The essential character of the requirement—*i. e.*, that parties wishing to participate in the proceeding must submit all studies and surveys in their custody—remains unchanged, though the Commission has provided for certain procedures to guarantee confidentiality and to keep a record of any sanctions imposed for noncompliance. Because we hold that appellants' challenge to this provision is untimely, we need not consider whether these revisions would alter our analysis of its lawfulness, or, for that matter whether the revisions are properly an object of this court's attention.

to an adjudicative-type hearing, can only do so if they first make available information they possess on any topic related to children's television advertising.

The Commission's special rules permit the legislative hearing's presiding officer as well as any Commissioner or designated Commission staff member to question witnesses. Affected persons outside the agency have no cross-examination rights at this juncture, although they can suggest questions to the presiding officer, who has the discretion to accept or reject these suggestions. Nor at this point can interested persons outside the agency present oral or written submissions rebutting other testimony presented at the legislative-type hearing. *Id.* at 17970.

At the close of the legislative-type hearing, the Commission's special rules for the children's advertising rulemaking allow interested persons to submit to the Commission "proposed disputed issues of fact that are material and necessary to resolve within the meaning of section 18." *Id.* at 17971. The children's advertising Notice, however, set forth a unique definition of "disputed issues" for the children's advertising proceeding:

> Only those *crucial* issues about which a *bona fide* dispute (established on the written record or at the legislative hearing) exists should be proposed to the Commission. They are the types of issues that are generally susceptible to definitive resolution through cross-examination. It is therefore possible that few or no issues will require designation [as "disputed"]. In any event, the Commission expects that substantially fewer issues will be designated than have been designated in most previous Commission rulemakings under Section 18. . . .

*Id.* (emphasis added). This "crucial issues" standard seems to heighten the threshold at which the quasi-adjudicative features of a section 18 proceeding begin. Whereas the 1975 rules directly imported the standard

from the language of section 18, *compare* 15 U.S.C. § 57a(c)(1)(B) (1976) *with* 16 C.F.R. § 1.13(d)(1)(i) (1978), the special rules imply that only if the Commission determines the existence of a fact or facts decisive of all other concerns will the participating parties be permitted to cross-examine or rebut other testimony. The special rules contemplate that the Commission will designate those issues (if any) meeting that standard through publication of same in the Federal Register. Some of the designated factual issues will be adjudicated solely through means of written submissions; remaining issues will be set for discussion at the "disputed issues" hearing. *Id.*

The special rules provide that, subject to the presiding officer's discretion, interested persons at the disputed issues hearing can cross-examine any person who presented testimony on a disputed issue, or they can rebut the testimony by way of oral presentation or written submission.[8] *Id.* This cross-examination, when allowed, must relate to designated issues; the special rules do not permit additional presentations. *Id.* The provisions of Section D(2)(e), requiring participating parties to produce studies and surveys in their custody pertaining to children's advertising, also applies to the disputed issues hearing. *Id.*

The bifurcation of the section 18 proceeding might have more than a superficial effect on the right of parties to participate in the children's advertising proceeding. As noted, the special rules require that all written and oral presentations be submitted in advance of the legislative hearing. There is no opportunity for participants outside the agency to address particular issues or allegations raised by other participants. Although at the end of the legislative hearing parties are entitled to propose "crucial" issues for the disputed issues hearing, these proposals must be based solely on the record of the legislative hearing or the written record compiled during the initial comment period. The ability of parties to

8. The special rules provide that "[a]ny person who appears at the legislative hearing may be required to appear at the disputed issues hearing for cross-examination." 43 Fed.Reg. 17970 (1978).

generate disputes and hence trigger the quasi-adjudicative features of section 18 depends, under the special rules for the children's advertising proceeding, on the ability of participating parties to guess in advance of the legislative hearing what the likely presentations will be. And this guessing game is rendered more difficult by the fact that the children's advertising Notice does not reveal exactly what rule the Commission proposes to promulgate.[9]

The Commission's special rules supplant its 1975 rules only insofar as the two are inconsistent and thus some Commission rules regulating other trade regulation proceedings apply to the children's advertising rulemaking. Among these is Commission Rule 1.18, which provides:

(c) *Communications to Commissioners and their attorney advisors.* Except as otherwise provided in this subpart of [*sic*] by the Commission, after commencement of a trade regulation rule proceeding, no person not employed by the Commission shall communicate, orally or in writing, with any Commissioner or any member of the Commissioner's personal staff, with respect to the merits of the proceeding.

16 C.F.R. § 1.18(c) (1978). This rule prohibits *ex parte* contacts between the Commissioners and individuals or organizations outside the agency. The Commission has no comparable rule proscribing or otherwise regulating communications between Commissioners and members of the Commission's general staff, including those staff members who prepared the investigative report that prompted the children's advertising rulemaking. Another Commission rule does forbid such contacts during an adjudicatory proceeding under section 5. *Id.* at § 4.7(b).

## II. ANALYSIS

Appellants urged in the district court that Commission Rule 1.18 indicated the Commission's tacit approval of contacts between Commissioners and the general Commission staff members who researched and wrote the report provoking the children's advertising proceeding. They argued that this approval violates section 18's requirement that rulemaking be on the record, and that it transgresses the prescriptions on *ex parte* contacts contained in *Home Box Office, Inc. v. FCC,* 185 U.S.App.D.C. 142, 567 F.2d 9 (D.C.Cir.), *cert. denied,* 434 U.S. 829, 98 S.Ct. 111, 54 L.Ed.2d 89 (1977), and its decisional progeny.

In addition, appellants claimed that the Commission violated section 553 of the Administrative Procedure Act when it failed to give notice and solicit comment before promulgating the special rules to govern the children's advertising proceeding. Appellants complain that the special rules have a substantial impact on their rights to participate in this section 18 proceeding and say that the rules thus fall within the notice and comment requirements under *Pickus v. United States Board of Parole,* 165 U.S. App.D.C. 284, 507 F.2d 1107 (D.C.Cir. 1974) and *National Motor Freight Traffic Association v. United States,* 268 F.Supp. 90 (D.D. C.1967) (three-judge court), *aff'd per curiam,* 393 U.S. 18, 89 S.Ct. 49, 21 L.Ed.2d 19 (1968).

Finally, appellants asserted that Section D(2)(e) of the children's advertising Notice lacks statutory authority and unlawfully burdens their right to participate in the children's advertising proceeding.

The district court, Judge Gesell presiding, expressed serious reservations about several of the Commission's actions, but held that appellants' claims were premature. We can certainly understand the district court's misgivings, for it is difficult to read the record in this case without becoming disturbed at some of the Commission's unique steps. Indeed one gets the impression that the proceeding itself is window dressing for the benefit of a court passing on a final trade regulation rule that was in stock long before its tentative models were displayed

---

9. The children's advertising Notice does list a number of factual questions the Commission intends to address and does generally state some possible elements of a rule, the Notice nowhere declares with particularity the rule the Commission is actually proposing. Appellants do not challenge the adequacy of this Notice and we have no occasion to consider it here.

in the children's advertising Notice. Whether or not the Commission has overestimated its power to shape a section 18 proceeding—and we agree with the district court that the answer to that question is far from clear—some of the Commission's activities at least suggest that it long ago settled on what it had in mind and deliberately fashioned its special rules to achieve that result with the fewest possible outside intrusions from precisely the parties Congress intended to have participate in a proceeding of this kind.[10]

Nevertheless this court cannot entertain appellants' appeal unless the district court had the power to hear the case and the issues are fit and proper for judicial resolution at this juncture. As we read the transcript of Judge Gesell's oral opinion, he appeared to assume that the district courts have subject matter jurisdiction over a suit such as this, but believed that appellants had to await promulgation of a final trade regulation rule circumscribing children's television advertising before pressing their claims. We think his analysis was essentially correct.

■■■ General federal question jurisdiction, now unencumbered by the amount-in-controversy requirement in suits against federal officials, 28 U.S.C. § 1331(a) (1976), gives the district courts the power to review

agency action absent a preclusion of review statute. *Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). The only prerequisite is that the suit arise under federal law. *See* C. Wright, *Federal Courts* 72 (3d ed. 1976); *National Treasury Employees Union v. Campbell*, 191 U.S.App. D.C. 146, 152–53, 589 F.2d 669, 675–77 (D.C. Cir. 1978) (Wright, C. J.). Appellants' suits meet that condition because they are premised on the federal constitution, section 18, and the Administrative Procedure Act. Section 18 does not oust federal question jurisdiction, nor does it expressly condition a party's right to seek judicial review in the district court upon a particular agency action. *Cf. Weinberger v. Salfi*, 422 U.S. 749, 757–61, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) (barring federal question jurisdiction in suit under Social Security Act, which provides that "[n]o action . . . shall be brought under [§ 1331] of Title 28," 42 U.S.C. § 405(h) (1976)). Instead it explicitly confines the exclusivity of appellate court jurisdiction to review of a final trade regulation rule. *Association of National Advertisers, Inc. v. FTC*, 565 F.2d 237, 239 (2d Cir. 1977). And immediately preceding the grant of subject matter jurisdiction to appellate courts section 18 provides that the remedies a party has under its judicial review provisions are "in addition to and not

---

**10.** Because the Commission intimates that its procedural decisions are insulated by the Supreme Court's recent decision in *Vermont Yankee Nuclear Power Co. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978) it is worth noting the holding in that case. *Vermont Yankee* reversed two decisions of this court that had invalidated the grant of nuclear power plant licenses by the Nuclear Regulatory Commission. The Supreme Court read this court's decisions as requiring the NRC to extend procedural rights beyond those mandated by the Administrative Procedure Act or other statutory framework. *Id.* at 540–42, 98 S.Ct. 1197. The Court noted that the NRC proceedings had no adjudicative aspects, but instead amounted to "rulemaking procedures in their most pristine sense." *Id.* at 524 n. 1, 98 S.Ct. at 1202 n. 1. It was undisputed that the NRC had fully complied with the Administrative Procedure Act's rulemaking provisions and there were no additional statutory requirements. *Id.* at 535, 549 n. 21, 98 S.Ct. 1197. According to the

Court, the vice in this court's decision was the inclusion in the remand order of a requirement that appeared to direct the agency to employ procedural devices other than those set out in the statute. The Court held that absent extraordinary circumstances the federal courts cannot upset the products of agency rulemaking on the ground that the agency abused its discretion in failing to provide procedures that the courts rather than Congress or the agency believed necessary. Thus the case restricts the ability of courts to refashion normal rulemaking procedures with judicially-conceived notions of administrative fair play. It has no bearing on the power of courts to interpret and apply congressional directives. Moreover, the special judicial review provisions in section 18 give a reviewing court more authority than was present under the statute in *Vermont Yankee, see* pp. ——, —— of 199 U.S.App.D.C., at pp. 620–622 of 617 F.2d *infra*, and this raises a question about the pertinence of the case in this setting.

in lieu of other remedies provided by law." 15 U.S.C. § 57a(e)(5)(A) (1976). Assuming an independent basis for jurisdiction, this savings clause preserves a reservoir of judicial review under the Administrative Procedure Act, 5 U.S.C. §§ 701–706 (1976). The independent basis for jurisdiction resides in 28 U.S.C. § 1331(a), thereby making available the instruments of injunction and declaratory judgment unless the familiar presumption of reviewability is overcome in these circumstances. *See Abbott Laboratories v. Gardner*, 387 U.S. 136, 139–46, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

The question, then, turns on considerations like ripeness, exhaustion, and finality. The first of these considerations, the ripeness doctrine, conserves judicial energies for problems that are real and present rather than hypothetical or remote. *See* K. Davis, *Administrative Law Treatise* § 21.01 at 116 (1958). The Supreme Court explained the rationale of the doctrine in *Abbott Laboratories v. Gardner, supra*:

> [I]t is fair to say that [the ripeness doctrine's] basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision [is] formalized and its effects felt in a concrete way by the challenging parties.

387 U.S. at 148–49, 87 S.Ct. at 1515. To achieve these goals, the Court fashioned a bipartite test directing courts to evaluate "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 149, 87 S.Ct. at 1515. The functional considerations separating those issues a court can decide from those eluding judicial competence require a pragmatic and common sense judgment about the suitability of the issues for judicial scrutiny and the need for that scrutiny.

The district court here correctly rejected as untimely appellants' assault on Commission Rule 1.18 because the claim does not pass the first half of the *Abbott* test. Appellants premise their attack on the speculation that contacts between Commissioners and members of the Commission's general staff will introduce matters foreign to the rulemaking record into the Commissioner's consideration of children's advertising. Appellants identify no instance of such contacts occurring, nor is there any indication that the Commissioners would rely on information so transmitted in arriving at a decision on the record.[11] In these circumstances it is inappropriate if not impossible to decide whether the proscription on *ex parte* contacts outlined in *Home Box Office* and other cases is to be applied in this situation. It is noteworthy in this connection that the Commission has chosen to include in the rulemaking record any staff comments that pertain to the issue of children's advertising. *See* 16 C.F.R. § 1.18(c) (1978). This provision ensures that a court of appeals passing on a seasonably presented challenge will have a complete factual record to explore the constitutional and statutory implications of the Commission's regulation of intra-agency communications.

*Abbott's* suitability requirement also dooms as premature appellants' challenge to Section D(2)(e) of the children's advertising Notice. Appellant's complaint pivots on their belief that the Section D(2)(e) requirement, when applied, will unlawfully burden their right to participate in the proceeding and will accomplish a deprivation of certain unexplained first amendment interests. Here again it is obvious that appellants' request for relief would require us to engage in an essentially abstract discussion of the potential effects of Section D(2)(e). Not only is the record devoid of any instance in which a party wishing to partici-

11. As Judge Gesell aptly observed, "[t]he possibility . . . that there may be such [intra-agency] contacts and have been such contacts in this proceeding does not present a clear-cut issue of law that this Court should resolve. The nature of the contacts . . . by the nature of things at this stage are unknown and in that sense the matter is to some degree conjectural." J.A. at 159.

pate in the proceeding has been concretely injured by application of the requirement, but indeed the record reveals no indication of any application of the requirement at all. Equally important, although Section D(2)(e), as we noted above, is seemingly a condition precedent to being heard, we are aware of no incidence of parties avoiding participation or otherwise altering their behavior in consequence of the requirement. It may be that this provision *will* unlawfully burden rights of parties to participate and *will* effect deprivations of constitutional rights, but in this situation, when the precise operation and impact of the requirement are unsettled, it is best for the judiciary to stay its hand until the provision in fact *does* result in the consequences appellants predict.

We hold that neither appellants' challenge to Commission Rule 1.18 nor their attack on Section D(2)(e) of the children's advertising Notice is suitable for judicial resolution at this juncture, and hence we have no need to decide whether these claims would meet the second half of the Abbott test. We also need not consider whether ripeness concerns similarly preclude appellants' claim that the Commission's promulgation of the special rules without notice or opportunity for comment violates section 553 of the Administrative Procedure Act, for we find an independent basis for holding this aspect of the suit premature. Specifically, on that claim, we find in section 18's statutory review processes clear evidence that Congress intended to foreclose nonstatutory interlocutory review of the Commission's decision.

In *Nader v. Volpe*, 151 U.S.App.D.C. 90, 466 F.2d 261 (D.C.Cir. 1972), this court stated the principle that nonstatutory remedies to correct allegedly unlawful agency action are generally unavailable unless the challenged action is *ultra vires* or beyond the capabilities of the statutorily-prescribed methods of review to repair.[12]  *Id.* at 271; *accord, Independent Cosmetic Manufacturers & Distributors, Inc. v. United States Department of Health, Education & Welfare,* 187 U.S.App.D.C. 342, 343, 344, 574 F.2d 553, 554 (D.C.Cir. 1978); *Standard Forge & Axle Co. v. Coleman,* 179 U.S.App. D.C. 309, 551 F.2d 1268, 1269 (D.C.Cir. 1977). *Nader* relied in part on the exhaustion doctrine, and in part on the principle of finality. It is at least an embodiment of the idea that the existence of statutory review procedures exhibit a congressional intent to confine judicial review to those procedures, assuming they apply to the claims at hand. *See generally* 5 U.S.C. §§ 703–704 (1976). The assumption is important, for a court must always determine whether the statutory remedies encompass the challenging party's claims and will provide that party with adequate relief upon review. *See Abbott Laboratories v. Gardner, supra,* 387 U.S. at 147–49, 87 S.Ct. at 1507.

The gist of appellants' section 553 claim is that the Commission's special rules are likely to produce a decision on children's advertising different from that which alternative rules might produce. Appellants thus conclude that the special rules have a substantial impact on their statutory rights and obligations, and insist that section 553 obligates the Commission to expose rules having such an impact to public examination and comment in advance of final promulgation. In this context, they stress that the

---

12. This circuit recognizes an exception to the *Nader* principle encompassing claims alleging constitutional violations that go to the structure of agency deliberations. For example, *Nader* cited *Amos Treat & Co. v. SEC,* 113 U.S.App.D.C. 100, 306 F.2d 260 (D.C.Cir. 1962), as an instance in which judicial intervention outside statutory procedures is appropriate. *See* 466 F.2d at 266 n. 31, 269 n. 54. In *Amos Treat,* this court granted *pendente lite* relief to a party who alleged that an administrative officer who had participated in the administrative investigation was also acting as a decisionmaker in a suspension proceeding under the Securities Exchange Act of 1934, and the court did so despite the availability of a remedy at the close of the hearing. *See* 306 F.2d at 265. Similarly, in the post-*Nader* case of *Fitzgerald v. Hampton,* 152 U.S.App.D.C. 1, 467 F.2d 755 (D.C.Cir. 1972), this court allowed interlocutory review of a claim that due process required a public hearing in a reinstatement proceeding. Appellants' section 553 claim does not fall within the *Amos Treat* exception, however.

rules for the children's advertising proceeding are unique and impose standards and conditions for participation in various stages of the proceeding which are of questionable validity. Appellants do not deny, however, that they will be able to raise this claim on a petition for review of a final trade regulation rule.

■ Section 18's special judicial review provisions provide an adequate remedy for appellant's section 553 claim. First, to the extent that appellants' challenge hinges solely on the Commission's compliance *vel non* with the notice and comment provisions, section 18 provides that a court of appeals passing on a final trade regulation rule can set aside that rule if the Commission has acted "without observance of procedure required by law." 15 U.S.C. § 57a(e) (1976); *see* 5 U.S.C. § 706(2)(D) (1976). Failure to comply with section 553's notice and comment provisions would amount to agency action accomplished without observance of procedure. The remedy—a remand to the Commission—would adequately redress appellants' grievance. Second, insofar as appellants' challenge to the special rules turns on the impact such rules have on the cross-examination and rebuttal rights of participating parties, section 18 allows a court of appeals to upset a trade regulation rule if a Commission rule or ruling unduly limiting such rights has precluded the disclosure of material facts necessary to a fair determination during the rulemaking. 15 U.S.C. § 57a(e) (1976). Thus apart from the manner in which the Commission adopted the special rules, if the special rules offend section 18's guarantees on cross-examination and rebuttal, or if the Commission abuses its discretion in administering same, then appellants would be entitled to relief.

## III

We have serious doubts about the validity of some of the Commission's actions.[13] Appellants' claims raise genuine and nonfrivolous questions about the extent of the Commission's discretion to adjust the rights and obligations Congress so carefully crafted in section 18. Interlocutory review of agency action is, however, very much the exception rather than the rule, and we conclude that judicial intrusion at this stage of the children's advertising proceeding is inappropriate in light of the prior decisions in this circuit dictating that result. Such reticence is "part of the price we pay for the advantages of the administrative process." *Thermal Ecology Must be Preserved v. Atomic Energy Commission*, 139 U.S.App.D.C. 366, 368, 433 F.2d 524, 526 (D.C.Cir. 1970).

The judgment of the district court is *Affirmed.*

J. SKELLY WRIGHT, Chief Judge, concurring in the result:

I agree that the judgment of the District Court must be affirmed for the reasons that this case is not ripe for judicial review and the District Court is without jurisdiction. I write separately, however, to voice my disagreement with the majority's analysis of the District Court's jurisdiction and its characterization of the procedural rules being followed by the Commission in this ongoing rulemaking proceeding.

## I

The issue presented for review on this appeal is whether the District Court erred

---

**13.** The concurring opinion begins by promising to state its disagreement with our analysis of the district court's jurisdiction and with our characterization of the Commission's actions. One searches the concurring opinion in vain, however, for an indication of any substantive disagreement over our handling of the ripeness and finality issues. The concurring opinion notes that the question presented—i. e. whether the district court should have heard appellants' claims—requires a simple negative. We agree, and we submit that we reach that result with an analysis considerably less elaborate than that of the concurring opinion. Indeed it appears that the one significant difference in our approach is that whereas this opinion deliberately avoids any detailed analysis of appellants' claims, which we hold unripe for review, the concurrence seems intent on disposing of those claims in the guise of jurisdictional analysis. Our concurring colleague may not share our misgivings about some of the Commission's actions, but it should be noted that nothing in this opinion purports to reflect any view on the underlying merits of appellants' contentions.

in dismissing these collateral actions [1] seeking interlocutory judicial review of procedures governing an ongoing Federal Trade Commission trade regulation rulemaking proceeding. The alleged basis for pursuing this unusual interlocutory judicial intrusion is that the FTC's rulemaking procedure involves "clear violations of law by the FTC which cannot be effectively remedied upon ultimate review of any trade regulation rule that may be forthcoming." [2] For the reasons stated herein I see no clear error of law requiring a judicial intrusion of this kind.

## II

This children's advertising rulemaking proceeding is being conducted by the Commission pursuant to the authority of Section 18 of the Federal Trade Commission Act, 15 U.S.C. § 57a (1976), which empowers the Commission to promulgate trade regulation rules, *i. e.,* "rules which define with specificity acts or practices which are unfair or deceptive acts or practices in or affecting commerce (within the meaning of section [5(a)(1) of the FTC Act])." 15 U.S.C. § 57a(a)(1)(B). It was initiated by the Commission upon consideration of petitions for rulemaking filed by Action for Children's Television (ACT) on April 6, 1977, and by the Center for Science in the Public Interest (CSPI) on April 26, 1977. 43 Fed.Reg. 17968 (1978). The petitions cited evidence indicating that large numbers of television advertisements for sugared products are seen by children each year, that young children—particularly preschoolers—have limited ability to recognize "selling intent" in advertisements, that commercial television messages have "believability" for children, and that television advertisements for sugared products tend to promote unbalanced, over-sugared diets which have led to pandemic levels of tooth decay in this country. The petitions argued that television advertising of sugared products directed to chil-

dren is unfair and deceptive in violation of Section 5 of the FTC Act and deleterious to the children's health. 43 Fed.Reg. at 17968–17969.

After considering a report by its staff based on an initial investigation of the allegations of the petitions, the Commission voted to commence a rulemaking proceeding under Section 18 of the FTC Act, 15 U.S.C. § 57a. Accordingly, it issued a Notice of Proposed Rulemaking, together with a set of procedural rules to govern the proceeding. 43 Fed.Reg. 17967–17972 (1978).

The Notice of Proposed Rulemaking explained that "[b]ecause the Commission has found that the public interest requires expeditious procedures for the [proposed rulemaking], it has determined, pursuant to 16 CFR 1.20, to employ the procedures set forth in this notice for this proceeding." 43 Fed.Reg. at 17968. Under the Notice the rulemaking began with a period for submission of written comments and proposed testimony for delivery at a legislative-type hearing. Following the written submissions the Notice contemplated a legislative hearing—which was in fact conducted—at which the statements would be delivered and the witnesses could be questioned by the presiding officer. *Id.* at 17968, 17970. Although no cross-examination of witnesses by other participants was permitted at the legislative hearings, interested persons could submit written questions to the presiding officer, who could ask them of the witnesses. *Id.*

Following the legislative hearing, interested persons will be afforded an opportunity to propose, based upon the rulemaking record, "disputed issues of fact that are material and necessary to resolve [by cross-examination] within the meaning of Section 18 of the FTC Act." *Id.* at 17971. If the Commission finds that there are such issues it will hold a second hearing, at which cross-

---

1. As their names indicate, appellants are representatives of manufacturers and purveyors of children's foods and their advertising agencies which package and direct their advertising at children over national television.

2. Brief for appellants at 20.

examination of relevant witnesses and written rebuttal submissions on those issues will be allowed. *Id.* Following the hearings the Commission staff and the presiding officer will issue reports and recommendations as to the form of a final rule, *id.*, post-record comments may be filed, *id.*, and the Commission will proceed to consider the rule.

Section D(2)(e) of the Notice, *id.*, announced that the following procedure would pertain to both the legislative and disputed issues hearings:

e. *Other information relevant to the rule.* Any person who seeks to present information[,] either orally or in writing, shall also present any studies or surveys in the possession, custody or control of the person or the organization he represents or is otherwise compensated by in connection with this proceeding which support, contradict or otherwise pertain to the person's presentation. This need not include information submitted by any other person or information which is publicly available.

Since publication of the Notice, and indeed after the decision of the District Court in this case, the Commission revised Section D(2)(e).[3] As a result of one of the changes, for example, the presiding officer at the hearings may accord *in camera* treatment to materials claimed to contain trade secrets or other confidential information. *See* 44 Fed.Reg. 3495, 3496 (1979).

Also applicable to the children's advertising rulemaking was the Commission's rule, promulgated in 1977, disallowing *ex parte*

3. *See* 44 Fed.Reg. 3495 (1979). In light of the revision, the § (D)(2)(e) issue raised by appellants is largely moot. As revised § (D)(2)(e) provides:

* * * Any person who seeks to present testimony or written comments which refer to or rely upon any study or survey whether published or unpublished shall also identify and submit to the presiding officer any studies or surveys in existence as of the date of the submission of the comments or proposed testimony that (1) are in the possession, custody or control of that person or of the organization he represents or is otherwise compensated by in connection with this proceeding; (2) support, contradict or otherwise pertain to the person's testimony or comments; and (3) are known to or in the files of any individual involved in the preparation of the testimony or comments. Such studies and surveys should not be submitted if they are publicly available or have been made part of the rulemaking record by any other person. For purposes of this paragraph, the terms "survey" and "study" means [*sic*] research and investigations such as literature searches, experiments, clinical tests, and polls.

The requirements of this paragraph apply only to the person on whose behalf testimony is given or comment made, and do not apply to the attorneys for such a person, unless and to the extent that the attorneys themselves testify or submit comments on their own behalf, and do not apply to members of an organization that testifies or comments unless and to the extent that the member also testifies or comments on the member's own behalf.

If a study or survey is deemed privileged or confidential, or is subject to the control of a third party, the person may request that the presiding officer grant relief from the operation of this paragraph, in which event the study or survey will not be put on the rulemaking record until the presiding officer has disposed of the request. The submission of a survey or study to the presiding officer pending its disposition shall not be deemed a waiver of any privilege asserted in a request for relief. Such relief may include, for example, *in camera* treatment under appropriate limitations on access, use or disclosure; deletion, masking or coding of data, a determination that in view of the relative pertinence and sensitivity, or absence of control, the study or survey need not be produced; or such other relief as the presiding officer may deem reasonable and appropriate.

In the event of unexcused or unjustified non-compliance with this paragraph, the presiding officer may (1) impose appropriate sanctions, including, for example, striking or assigning diminished weight to the person's testimony or comment, or drawing adverse inferences; and (2) may issue subpoenas.

All determinations made by the presiding officer with respect to a request for relief or the imposition of sanctions under this paragraph shall be specifically identified and made part of the rulemaking record.

44 Fed.Reg. at 3496.

In order to assure that persons whose response to the Commission's rulemaking notice was based on aspects of or perceived problems under the original version were not prejudiced by the time of the revision, the Commission also afforded such persons an opportunity to submit belated or revised comments.

communications to the Commissioners and their personal staffs by persons outside the FTC, but not similar communications by the FTC staff. *See* 16 C.F.R. § 1.18(c) (1979). The proscription on *ex parte* contacts applies after commencement of any trade regulation rulemaking proceeding.[4]

## III

### A

Undeterred by the District Court's dismissal of their complaint, appellants attack the Commission's procedural rules in this ongoing children's advertising rulemaking proceeding.[5] Appellants raise three issues purportedly demonstrating "clear violations of law by the FTC which cannot be effectively remedied upon ultimate review of any trade regulation rule that may be forthcoming." Their first allegation is that the rules of practice announced in the notice of proposed rulemaking have a "substantial impact" upon rights guaranteed them under Section 18—particularly cross-examination rights—and thus notice and comment under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706 (1976), was required before the rules could be used in these proceedings. Appellants also argue that Section (D)(2)(e), requiring submission of all pertinent studies and surveys, exceeds the Commission's authority and violates their statutory and constitutional rights to participate in the rulemaking. Finally, appellants allege that the FTC's 1975 rule governing *ex parte* contacts, to the extent it permits intra-agency communications between FTC staff and the Commissioners, violates the due process clause and the statutory requirement that rulemaking be based on the record.

In light of the special judicial review provisions contained in Section 18, it would appear that the District Court lacked subject matter jurisdiction over the claims presented here by appellants; thus this court would have no subject matter jurisdiction with respect to interlocutory review. The District Court pretermitted this jurisdictional issue,[6] probably because lack of ripeness was so obvious.

### B

Section 18 provides that judicial review of a trade regulation rule lies exclusively in a proper Court of Appeals after the administrative proceeding is concluded.[7] The court shall set aside the rule if it determines that the rule is not supported by substantial evidence in the record *or* that

> a Commission rule or ruling under subsection (c) of this section *limiting the petitioner's cross-examination or rebuttal* submissions,

has precluded disclosure of disputed material facts * * *.

15 U.S.C. § 57a(e)(3)(B)(ii) (emphasis added). The statute further provides:

> Procedure Act (APA), 5 U.S.C. § 553(b) (1976), the entire § 18 proceeding is invalid. Thus appellants would have this court order the Commission to conduct two notice and comment rulemaking proceedings, one after the other, one for the procedural rules, followed by another for the children's advertising § 18 rulemaking.

---

**4.** A different rule applies to FTC adjudicative proceedings. *See* 16 C.F.R. § 4.7(b) (1979).

**5.** The delay of agency rulemaking has become a scandal of such proportions as to merit the comments of judges, lawyers, legal commentators, and even Congress. As the Supreme Court has demonstrated in *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978), rulemaking proceedings are overjudged and overlawyered, with the result that the protection Congress has sought to provide the public in authorizing agency rulemaking has, in many instances, been a long time coming—if indeed it comes at all.

For example, appellants' position is that since the procedural rules under which the Commission is conducting the children's advertising rulemaking proceedings were not themselves subjected to notice and comment rulemaking under § 553(b) of the Administrative

**6.** *See, e. g., Philbrook v. Glodgett*, 421 U.S. 707, 721, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975); *Adams v. Vance*, 187 U.S.App.D.C. 41, 45 n.7, 570 F.2d 950, 954 n.7 (D.C.Cir. 1977) (court need not rule on a jurisdictional question when the issue is difficult and inadequately presented in the record or briefing and the merits are clearly against the party seeking to invoke jurisdiction).

**7.** 15 U.S.C. § 57a(e)(5)(B).

(C) A determination, *rule*, or ruling of the Commission described in paragraph (3)(B)(i) or (ii) *may be reviewed only in a proceeding under this subsection* and only in accordance with paragraph (3)(B). * * * [8]

Among other things, paragraph (3)(B) requires the reviewing court to "tak[e] due account of the rule of prejudicial error * * * ." And, according to the APA, the way to determine prejudicial error is *on the record taken as a whole.* 5 U.S.C. § 706.

In Section 18 Congress also specifically provides that a Court of Appeals, upon the filing of a petition for review of a *final* trade regulation rule, should conduct judicial review in accordance with the provisions of the APA, 5 U.S.C. § 706, as well as the more specific review provisions of Section 18(e). The reviewing court must determine whether the final rule resulted from agency action which was "without observance of procedure required by law," *id.* § 706(2)(D), "in excess of statutory jurisdiction, authority, or limitations," *id.* § 706(2)(C), or "contrary to constitutional right," *id.* § 706(2)(B). If the court finds that the agency action falls within one or more of the above categories, *and* that such action was not harmless error, 15 U.S.C. § 57a(e)(3), the court shall set aside the trade regulation rule and remand to the agency for corrective action.

All of appellants' claims appear to be cognizable and remediable under this statutory procedure for review of a final trade regulation rule. To the extent that appellants' notice and comment claim turns on the alleged impact of the procedural rules on cross-examination and rebuttal rights, it is a challenge to "Commission rule[s] * * limiting * * * cross-examination or rebuttal submissions," 15 U.S.C. § 57a(e)(3)(B)(ii), which may be reviewed only in accordance with the very specific

judicial review provisions of Section 18. 15 U.S.C. § 57a(e)(5)(C). Pursuant to Section 18(e)(3), 15 U.S.C. § 57a(e)(3), which incorporates the judicial review provisions of 5 U.S.C. § 706(2)(A)–(D), a Court of Appeals, upon review of a final trade regulation rule, could consider and remedy appellants' grievances, to wit: that the FTC unlawfully failed to comply with the notice and comment provisions of the APA, an alleged violation of 5 U.S.C. § 706(2)(D); that the FTC exceeded its authority in issuing Section (D)(2)(e), an alleged violation of *id.* § 706(2)(C); and that Section (D)(2)(e) and the *ex parte* communications rule violate the FTC Act, *see id.* § 706(2)(A), (C), and the Constitution, *see id.* § 706(2)(B).

Rather than awaiting final agency action and pursuing the statutorily prescribed method of review, appellants rushed to the District Court in an effort to obtain a nonstatutory, interlocutory remedy. Although appellants relied on the saving clause of Section 18 [9] as giving the District Court, and in turn this court, jurisdiction over their claims, I believe the District Court was without subject matter jurisdiction. As this court stated in *Nader v. Volpe*, 151 U.S.App.D.C. 90, 95, 466 F.2d 261, 266 (D.C. Cir. 1972):

[W]hen Congress has specified a procedure for judicial review of administrative action, courts will not make nonstatutory remedies available without a showing of patent violation of agency authority or manifest infringement of substantial rights irremediable by the statutorily-prescribed method of review * * *.

(Footnotes omitted.) Accordingly, appellants could properly resort to nonstatutory remedies under the saving clause *only if* they could show that the Commission's actions were patently *ultra vires* or patently violated substantial rights in a manner not remediable upon Section 18 review.[10] *See*

---

**8.** 15 U.S.C. § 57a(e)(5)(C) (emphasis added).

**9.** 15 U.S.C. § 57a(e)(5)(A): "Remedies under the preceding paragraphs of this subsection are in addition to and not in lieu of any other remedies provided by law."

**10.** This result pertains "notwithstanding the absence of an express statutory command of exclusiveness." *Whitney Nat'l Bank in Jefferson Parish v. Bank of New Orleans & Trust Co.,* 379 U.S. 411, 422, 85 S.Ct. 551, 13 L.Ed.2d 386 (1965), *quoted in Nader v. Volpe,* 151 U.S.App. D.C. 90, 92, 466 F.2d 261, 268 (D.C.Cir. 1972).

*id.,* 151 U.S.App.D.C. at 100, 466 F.2d at 271.

The District Court determined that the rules governing the children's advertising rulemaking proceeding and the Commission's actions in establishing them were not patently *ultra vires.*[11] In this regard the court relied in part on the Supreme Court's teaching that an agency's interpretation of its own statute should be accorded "great deference" by the judiciary.[12] *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).[13]

As to appellants' allegations that these procedural rules "clearly violated" constitutional and statutory rights, the District Court, having assumed the existence of sub-

ject matter jurisdiction, correctly concluded that the claims were not ripe for judicial resolution. In dismissing the case the court relied heavily on and quoted the following classic formulation of the ripeness doctrine from *Abbott Laboratories v. Gardner,* 387 U.S. 136, 148–149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967):

> Without undertaking to survey the intricacies of the ripeness doctrine it is fair to say that its basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference *until an administrative decision has been formalized and its effects felt in a con-*

Congress' prescription of a specific statutory review scheme reflects a policy choice designed to deter both piecemeal review of Commission actions and repetitive litigation, and "to avoid unnecessary costs or delay" during the rulemaking proceeding, 15 U.S.C. § 57a(c)(2). *See Califano v. Sanders,* 430 U.S. 99, 108, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Nader v. Volpe, supra,* 151 U.S.App.D.C. at 95–97, 466 F.2d at 266–268. This being true, "[o]ur duty, of course, is to respect that choice." *Califano v. Sanders, supra,* 430 U.S. at 108, 97 S.Ct. at 986.

11. Although the District Court questioned whether § (D)(2)(e) was within the Commission's power, the court found the issue "far from clear" and believed that *application* of § (D)(2)(e) was necessary before the issue could be resolved. *See* Joint Appendix (JA) 161. The District Court then discussed appellants' notice and comment claim as follows:

> Now I am aware that related to this D(2)(e) issue is *the claim that the procedures established are inconsistent with the regulations that have been adopted by the Commission for promulgation of trade regulation rules and that it is contended that this change is of such character that new rule-making proceedings would be necessary before the initiation of the proceedings to include anything comparable to D(2)(e).*
>
> The Court's view is that that contention, *which relates also to other aspects of the case which I need not mention,* is not sound. That *these rules are procedural* in character and that in any event *the Commission kept its discretion to depart from the published trade regulation rules which it promulgated;*

and it is well that the Court give deference at this stage to the Commission's own interpretation of its regulations.

JA 162 (emphasis added). As to the challenge to the *ex parte* communications rule, the court concluded:

> [C]ertainly there is no direction to the District Court at this time which would enable it to say with certainty that *in this rule-making proceeding* certain contacts by the staff with the Commission are forbidden.

JA 159–160 (emphasis added).

12. *See* JA 162, *quoted in* note 11 *supra.*

13. *See Columbia Broadcasting System, Inc. v. Democratic Nat'l Committee,* 412 U.S. 94, 121, 93 S.Ct. 2080, 2096, 36 L.Ed.2d 772 (1973): "[W]e are guided by the 'venerable principle that the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong . . . .'" Quoting *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 381, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969). *See also E. I. duPont de Nemours & Co. v. Collins,* 432 U.S. 46, 54–55, 97 S.Ct. 2229, 53 L.Ed.2d 100 (1977). Our own cases are to the same effect. *See, e. g., Richmond Power & Light Co. v. FERC,* 187 U.S.App.D.C. 399, 404 & n.19, 574 F.2d 610, 615 & n.19 (D.C.Cir. 1978); *Wilderness Society v. Morton,* 161 U.S.App.D.C. 446, 448–449, 479 F.2d 842, 864–865 (D.C.Cir.) (*en banc*), *cert. denied,* 411 U.S. 917, 93 S.Ct. 1550, 36 L.Ed.2d 309 (1973); *Trans World Airlines, Inc. v. CAB,* 128 U.S.App.D.C. 126, 138, 385 F.2d 648, 660 (D.C.Cir. 1967), *cert. denied,* 390 U.S. 944, 88 S.Ct. 1029, 19 L.Ed.2d 1133 (1968).

*crete way* by the challenging parties. * *

(Emphasis added; footnote omitted.) [14]

## IV

Appellants' claims on this appeal must be examined with reference to two benchmarks—whether the Commission's actions were patently inconsistent with its statutory authority, and whether the rules applicable to the children's advertising rulemaking proceeding clearly violate substantial statutory or constitutional rights in a manner beyond the capability of a Court of Appeals to repair upon review of any final trade regulation rule. *See Nader v. Volpe, supra,* 151 U.S.App.D.C. at 95, 101, 466 F.2d at 266, 272; *see also Abbott Laboratories v. Gardner, supra,* 387 U.S. at 152, 87 S.Ct. at 1507.

14. Particularly where, as here, the relief sought is discretionary—the injunctive and declaratory judgment—the District Courts have been reluctant to take affirmative action and, in such cases, appellate courts have been slow to find an abuse of discretion. *See Abbott Laboratories v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

15. 40 Fed.Reg. 15232 (1975).

16. *See* note 11 *supra.*

17. Section 553(b) of the APA, 5 U.S.C. § 553(b), reads in pertinent part:
    Except when notice or hearing is required by statute, this subsection does not apply—
    (A) to * * * rules of agency organization, procedure, or practice[.]

18. The provisions of § 18 are accurately outlined in appellees' brief at 3–5 as follows:
    Sections 18(b)–(d) (15 U.S.C. § 57a(b)–(d)) establish procedures supplementing the informal rulemaking requirements of the APA (5 U.S.C. § 553), by which such rules may be promulgated. Rulemaking is commenced by publication of a notice of proposed rulemaking "stating with particularity the reason for the proposed rule" (15 U.S.C. § 57a(b)). The Commission is required to allow interested persons to submit data, views, and arguments in writing or orally and to make all submissions publicly available. Further, to the extent that "the Commission determines that there are disputed issues of material fact it is necessary to resolve," the Commission is required to hold an "informal" hearing, including rebuttal submissions and such cross-examination of persons as "the Commission

## A

Appellants attack these procedural rules as invalid because they are in some respects different from the set of procedural rules issued for rulemaking under Section 18 in 1975 [15] and were not subjected to notice and comment rulemaking under the APA, 5 U.S.C. § 553(b) (1976). Thus appellants would have the Commission provide a Section 553(b) notice and comment proceeding for the children's advertising rulemaking procedural rules before undertaking the Section 553(b) notice and comment proceeding required to consider the proposed Section 18 substantive rules. As the District Court held, this contention is without merit.[16] Section 553(b) of the APA by its terms does not apply to procedural rules except where required by the statute they are implementing.[17] The Federal Trade Commission Act has no such requirement.[18]

determines (i) to be appropriate, and (ii) to be required for a full and true disclosure with respect to" such disputed issues of material fact that the Commission has determined it is necessary to resolve (15 U.S.C. § 57a(c)). Following the completion of the proceedings, the Commission may issue a rule, together with a statement of basis and purpose, or it may decide not to issue a rule (15 U.S.C. § 57a(d)). These procedures are supplemented by the Commission's rules (16 C.F.R. § 1.7 *et seq.*) and by procedures established in the notice of proposed rulemaking * * *.

Rules promulgated by the Commission under Section 18 are subject to judicial review not only in enforcement proceedings subsequently initiated by the Commission for rule violations (see 15 U.S.C. § 45(m)(1)(A)), but also, at the instance of any interested person, in an appropriate court of appeals, immediately upon completion of the Commission's rulemaking proceeding (15 U.S.C. [§] 57a(e)). The court of appeals is authorized to set aside the rule if, "taking due account of the rule of prejudicial error," the Commission's action is "not supported by substantial evidence in the rulemaking record * * * taken as a whole"; or if the Commission "has precluded disclosure of disputed material facts which was necessary for fair determination by the Commission of the rulemaking proceeding taken as a whole"; or on any ground set forth in 5 U.S.C. § 706(a)(A)–(D), including that the Commission's action is "without observance of procedure required by law". 15 U.S.C. § 57a(e)(3). The reviewing court is also authorized to grant leave to petitioners, or the Commission, to make addi-

Despite the fact that no statute expressly requires these procedural rules to be subjected to notice and comment, appellants argue that compliance with Section 553(b) of the APA is necessary here because these procedural rules will "have a substantial impact on the rights and obligations of parties who intend to participate in the proceeding."[19] Assuming the continued vitali-

ty of the "substantial impact" test, I, in agreement with the District Court, conclude that the test does not avail appellants in this case.[20] Appellants have failed to demonstrate that the rules governing the children's advertising proceedings are likely to substantially restrict their rights or increase their obligations with respect to participation in this Section 18 rulemaking. More-

---

tional oral submissions or written presentations in the rulemaking proceeding, and to review modified or new rules made by reason of these additional submissions or presentations. 15 U.S.C. § 57a(e)(2). (Footnote omitted.)

**19.** Brief for appellants at 25.

**20.** In arguing that the children's advertising hearing rules are not procedural rules, appellants rely upon the "substantial impact" test articulated in *National Motor Freight Traffic Ass'n v. United States*, 268 F.Supp. 90 (D.D.C. 1967) (three-judge court), *aff'd per curiam*, 393 U.S. 18, 89 S.Ct. 49, 21 L.Ed.2d 19 (1968), and *Pickus v. United States Board of Parole*, 165 U.S.App.D.C. 284, 507 F.2d 1107 (D.C.Cir. 1974).

Although the Commission in its brief questions whether the "substantial impact" test can survive the *Vermont Yankee* decision, I do not reach that question. Rather, assuming the continued vitality of the "substantial impact" cases, as indicated in text, I conclude that the test has no application here.

Actually, this case is so dissimilar to *National Motor Freight* and *Pickus* that appellants' reliance on those cases exposes the bankruptcy of their position. In *National Motor Freight*, as a result of the Supreme Court's decision in *T.I.M.E. Inc. v. United States*, 359 U.S. 464, 79 S.Ct. 904, 3 L.Ed.2d 952 (1959), the Interstate Commerce Commission established a "purely administrative" remedy of reparations for past charges determined by the ICC to be illegal. Congress had enacted only a judicial remedy. 268 F.Supp. at 95. The administrative scheme provided that a carrier and a shipper could voluntarily agree that the shipper's past rate had been illegally high, and their agreement would be subject to Commission review. However, this informal adjudication of whether a certain rate had been illegal could have had "palpable effects upon other carriers and shippers" who were not parties to that agreement. *Id.* at 96. If those carriers had rates identical to the administratively adjudicated rate, their rates would have been declared illegal without an opportunity to be heard on the question, and the ICC's determination of the issue of rate illegality would be applicable by statute in any subsequent judicial action to compel payment of reparations. Thus the "substantial impact"

of the administrative scheme is obvious. *See id.* at 92, 94.

In *Pickus*, a suit brought by inmates of federal penal institutions, a panel of this court held that rules issued without rulemaking of any kind and defining parole selection criteria "are substantive agency action, for they define a fairly tight framework to circumscribe the [Parole] Board's statutorily broad power," 507 F.2d at 1113, and are "calculated to have a substantial effect on ultimate parole decisions," *id.* at 1112–1113. By establishing specific categories and subcategories of factors relevant to a parole decision, the rules minimized the influence of some factors and "encourag[ed] decisive reliance" upon others. *Id.* at 1113. These rules, therefore, were substantive, requiring rulemaking under § 553(b).

The direct impact of the rules at issue in both *National Motor Freight* and *Pickus* clearly would have been upon substantive rights of the plaintiffs challenging them, whereas the direct impact, if any, of the FTC rules here at issue would be upon procedural rights accorded by § 18. In addition, while the rules in the former cases were administratively created regulations designed to supplement or to circumscribe statutory provisions, the FTC here is seeking to follow congressionally prescribed procedures in § 18 and its mandate "to avoid unnecessary costs or delay" in the substantive rulemaking. *See* 15 U.S.C. § 57a(c). Finally, and most importantly, judicial review of the ultimate agency decisions and hence the rules governing the decisionmaking in both *National Motor Freight* and *Pickus* were limited or nonexistent, whereas here Congress specifically provided that the FTC's procedural rules and rulings were to be judicially scrutinized for any prejudicial impact upon review of the final substantive (trade regulation) rule. *See* 15 U.S.C. § 57a(c); Part IV *infra*.

In sum, despite a Herculean effort appellants have simply failed to demonstrate that the FTC's facially procedural rules will have a substantial impact on their statutory rights. The present posture of appellants' challenge simply does not permit a reasoned determination of whether the rules will have any impact, and more importantly whether they will have a *prejudicial* impact, on rights granted under § 18 as properly construed. *See* 15 U.S.C. § 57a(e)(3).

over, to the extent that the rules as applied may ultimately affect appellants' participatory rights, their remedy lies in a challenge to the final trade regulation rule, as specifically directed by Congress. 15 U.S.C. § 57a(e)(3)(B).

When it published the initial notice of proposed rulemaking under Section 18 in this case, the Commission published the new procedural rules and stated that expeditious procedures were in the public interest because health issues were involved.[21] 43 Fed.Reg. at 17968. In so doing the Commission invoked its authority under 16 C.F.R. § 1.20 (1978)—a 1975 rule which had been subjected to notice and comment before promulgation:

§ 1.20 **Expeditious procedure.**

Any or all of the procedures established in this subpart may be dispensed with by the Commission, *to the extent that they are not otherwise required by law,* when it finds, for good cause, that such procedures are impractical, unnecessary, or contrary to the public interest. In that case the Commission shall publish with the rule or amendment a brief statement of its reasons for dispensing with any such procedures.

(Emphasis added.)[22] The Commission was aware that the children's advertising rulemaking, considering the public interest and the special interests involved, might be almost interminable, as indeed is proving to be the case, unless some change was made in the 1975 rules.[23] So the children's advertising rules are "experimental" procedural rules designed "to avoid unnecessary costs or delay." 15 U.S.C. § 57a(c)(2). *See* 43 Fed.Reg. at 17968. And provided those rules appear consistent with applicable law,

16 C.F.R. § 1.20 (1979), appellants are not entitled to judicial review at this juncture.

A proper reading of the language and legislative history[24] of Section 18 clearly indicates that the format of the children's advertising proceedings is consistent with the congressional mandate. The bifurcation of the statutory "informal hearing" into a first stage "legislative hearing" and a second stage "disputed issues hearing" not only basically follows the 1975 rules, but parallels subsections (c)(1)(A) and (c)(1)(B) of Section 18 as well. During the legislative hearing interested persons may present their positions orally as well as in writing, consistent with subsection (c)(1)(A). Cross-examination of persons presenting information is not required at this stage because statutory cross-examination rights do not attach until and unless the Commission designates "disputed issues of material fact." The designation will occur after the legislative hearing, and rebuttal and cross-examination on those disputed issues will occur in the second stage hearing, satisfying subsection (c)(1)(B).

While the FTC concedes that this procedure differs marginally from that under the 1975 rules, appellants exaggerate the degree of difference. Under the 1975 rules the FTC would publish an initial notice of proposed rulemaking, inviting interested persons to submit written comments on the rule and to propose disputed issues of fact. 16 C.F.R. § 1.11 (1979). After evaluating only these written submissions the Commission would designate the issues which it determined to be disputed, and it would publish the designated issues in the final notice of proposed rulemaking. *Id.* § 1.12. An informal hearing, including oral presen-

---

21. *See* Part II *supra.*

22. *See* 40 Fed.Reg. 15237 (1975); *id.* at 33966.

23. Several commentators had criticized the FTC for its unwieldly and lengthy proceedings. *See, e. g.,* 1 K. Davis, Administrative Law Treatise § 6:21 at 551–553 (2d ed. 1978); Kestenbaum, *Rulemaking Beyond APA: Criteria for Trial-Type Procedures and the FTC Improvement Act,* 44 Geo.Wash.L.Rev. 679, 696–705 (1976). Indeed, the Commission specifically intended the rules governing the children's adver-

tising proceedings to be responsive to similar congressional criticism of proceedings under the 1975 rules. *See* 43 Fed.Reg. 17968 (1978) (*quoting* H.R.Rep. No. 44, 95th Cong., 1st Sess. 28–29 (1977)).

24. *See* S.Rep. No. 1408, 93d Cong., 2d Sess. (1974) (Conference Report); H.R.Rep. No. 1606, 93d Cong., 2d Sess. (1974) (Conference Report); H.R.Rep. No. 1107, 93d Cong., 2d Sess. (1974).

tations in addition to rebuttal and cross-examination, would then be held to resolve the designated disputed issues. *Id.* §§ 1.12, 1.13. Thus the principal difference between the 1975 procedure and the children's advertising procedure is that under the latter the designation of disputed issues is deferred until after oral presentations at a legislative hearing. Under *both* procedural formats rebuttal and cross-examination occur only *after* disputed issues are designated and must pertain to those issues.

To the extent that the legislative hearing, after notice and comment under the children's advertising rules, better enables the parties to suggest, discuss, and hopefully to agree on some issues, and the Commission to designate, only issues which are in fact "disputed," thereby eliminating unnecessary cross-examination, this bifurcated hearing comports more than the 1975 rules with the congressional mandate "to avoid unnecessary costs or delay" in the rulemaking proceedings.[25] 15 U.S.C. § 57a(c)(2).

This bifurcated hearing procedure has no "substantial impact" on participants' rights to cross-examination. Actually, it allows the parties greater participation in determining the really disputed issues of fact to

be reserved for cross-examination. Moreover, Congress granted parties only *qualified* cross-examination rights, not trial-type cross-examination. 15 U.S.C. § 57a(c)(2), (3). Parties have a "right" to cross-examination only on disputed issues of material fact, only *after* the Commission designates such issues, and only *if* the Commission determines that cross-examination (rather than rebuttal) is both appropriate and required for resolution of the disputed issues. Even after satisfying these hurdles the parties themselves do not necessarily put their own questions to the witnesses. The statute provides that the Commission or the Administrative Law Judge may decide to cross-examine witnesses on behalf of the interested parties. 15 U.S.C. § 57a(c)(2).

Appellants also criticize the Commission's definition of "disputed issues of material fact," which under Section 18 give rise to cross-examination rights, that is contained in the initial notice of the children's advertising rulemaking. The FTC statute provides for cross-examination on "disputed issues of *material* fact it is *necessary* to resolve."[26] The notice of rulemaking provides that persons may propose "disputed

---

**25.** The FTC adopted rules of procedure similar to those successfully adopted by the Environmental Protection Agency (EPA) under the Toxic Substances Control Act, 15 U.S.C. § 2605 (1976), which is almost identical to § 18. *Compare* 15 U.S.C. § 2605(c)(3) *with id.* § 57a(c). In addition, the FTC modeled the § (D)(2)(e) rule after an analogous Food and Drug Administration (FDA) regulation. *Compare* 21 C.F.R. § 12.85(a)(2) (1979); 41 Fed.Reg. 51706, 51726 (1976), *with* 43 Fed.Reg. 17971 (1978).

Appellants are simply wrong in suggesting that, because the EPA allowed notice and comment on its procedural rules establishing bifurcated hearings, 42 Fed.Reg. 20640 (1977); *id.* at 61259 (to be codified at 40 C.F.R. § 750.1 *et seq.*), the FTC must do the same here. The APA does not require notice and comment before agency promulgation of procedural rules. 5 U.S.C. § 553(b)(A). In promulgating its hearings rules the EPA expressly characterized the rules as "procedural." 42 Fed.Reg. at 61260 (explaining why the rules could be effective immediately upon publication). The mere fact that the EPA voluntarily provided interested persons an opportunity to comment that was not mandated by the APA did not change the essential nature of such rules from "procedural" to "substantive." As *Vermont Yankee*

makes clear, an agency may provide more rulemaking procedures than the APA requires, but a court may not order it to do so—even a court that has waited until the rulemaking is concluded and the matter is properly before the court for review. *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc., supra* note 4, 435 U.S. at 524–525, 98 S.Ct. 1197.

In addition, if the EPA had been compelled to afford notice and comment on its procedural rules of general applicability, it would not follow that the FTC is compelled to do the same for rules of particular applicability to the children's advertising rulemaking. This second analysis finds support not only in the Commission's reserved power to depart from its 1975 rules, 16 C.F.R. § 1.20 (1978), but also in the FTC Act's judicial review provisions. The Act directs that a Court of Appeals, in reviewing a *final* trade regulation rule, must consider whether any Commission "procedural" rules or rulings restricting cross-examination had a *prejudicial* impact upon participants' statutory rights. 15 U.S.C. § 57a(e)(3).

**26.** 15 U.S.C. § 57a(c)(1)(B) (emphasis added).

issues of fact that are *material* and *necessary* to resolve within the meaning of Section 18 * * * ." [27] It then goes on to explain that persons should propose only issues of "specific or adjudicative, in contrast to legislative, fact," and only "crucial issues about which a *bona fide* dispute * * exists * * * ." [28] Appellants focus on a distinction between "material" and "crucial" facts in alleging that the notice's definition will sharply curtail the scope of, and thus appellants' ability to participate in, the disputed issues hearing. [29] But the plain language of the statute is that a "disputed fact" must be both material and "*necessary to resolve.*" The Commission's use of the word "crucial" obviously does not contradict or substantially alter the statutory standard of "necessary to resolve." This "crucial" controversy is nothing more than lawyers' nitpicking. To suggest that it provides a basis for a judicial intrusion into an ongoing agency rulemaking proceeding is pure reaching for a result prohibited by *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S.

519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978), and a legion of cases stemming from *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938).

### B

Appellants also contest the applicability of the Commission's 1977 rule, 16 C.F.R. § 1.18(c) (1979), governing communications to Commissioners after the commencement of rulemaking proceedings. [30] Rule 1.18(c) provides that members of the public may not communicate with Commissioners or their personal staffs except as provided in the rules concerning public participation in the proceedings. If any prohibited *ex parte* communication occurs the Commissioner or staff member must make public the form and content of the communication.

Unlike the Commission rule governing *ex parte* communications during *adjudicative* proceedings, 16 C.F.R. § 4.7 (1979), [31] Rule 1.18(c) in terms does not prohibit communi-

---

27. 43 Fed.Reg. at 17971 (emphasis added).

28. *Id.*

29. Brief for appellants at 28–29 & n.9.

30. 16 C.F.R. § 1.18(c) (1979) provides:
(c) *Communication to Commissioners and their attorney advisors.* Except as otherwise provided in this subpart o[r] by the Commission, after commencement of a trade regulation rule proceeding, no person not employed by the Commission shall communicate, orally or in writing, with any Commissioner or any member of a Commissioner's personal staff, with respect to the merits of that proceeding. If a prohibited communication does occur, the communication will be placed on the public record on receipt. In the case of an oral communication, the Commissioner or staff member shall place on the public record a memorandum setting forth the contents of such communication and the circumstances thereof. Such communications or memoranda will not be part of the rulemaking record.

31. 16 C.F.R. § 4.7(a)–(b) (1979) provides:
§ 4.7 Ex parte communications
(a) *Definitions.* For purposes of this section, "ex parte communications" means an oral or written communication not on the public record with respect to which reasonable prior notice to all parties is not given, but

it shall not include requests for status reports on any matter or proceeding.
(b) *Prohibited ex parte communications.* While a proceeding is in adjudicative status within the Commission, except to the extent required for the disposition of *ex parte* matters as authorized by law, (1) no person not employed by the Commission and no employee or agent of the Commission who performs investigative or prosecuting functions in adjudicative proceedings, shall make or knowingly cause to be made to any member of the Commission, or to the Administrative Law Judge, or to any other employee who is or who reasonably may be expected to be involved in the decisional process in the proceeding, an ex parte communication relevant to the merits of that or a factually related proceeding; and (2) no member of the Commission, the Administrative Law Judge, or any other employee who reasonably may be expected to be involved in the decisional process in the proceeding, shall make or knowingly cause to be made to any person not employed by the Commission, or to any employee or agent of the Commission who performs investigative or prosec[u]ting functions in adjudicative proceedings, an ex parte communication relevant to the merits of that or a factually related proceeding.

cations between the FTC staff and the Commissioners and their personal staffs during the course of *rulemaking* proceedings. Appellants urge that Rule 4.7, rather than Rule 1.18(c), should apply to this Section 18 rulemaking because it is "a proceeding in which facts will be adjudicated" [32] and the FTC staff "has wedded its allegiance to one side of the dispute * * *." [33] Appellants point to the *possibility* that the FTC staff might "secretly * * * plead their convictions" before individual Commissioners,[34] thus irreparably biasing the decisionmakers and rendering invalid any final trade regulation rule.

Any attempt to characterize the children's advertising proceedings as an "adjudication" or "adversarial process" completely disregards the congressional mandate in Section 18 requiring *informal rulemaking*.[35] 15 U.S.C. § 57a(b), (c). Moreover, the District Court correctly perceived that the law in this circuit is unsettled with regard to the propriety of various types of intra-agency communications that might occur during the course of a rulemaking.[36] Since the nature of the contacts which may occur between the FTC staff and the Commissioners during this rulemaking is a matter of speculation, and since a court could not now determine whether any such communications would constitute prejudicial error,[37] this claim is clearly unripe for review. Staff recommendations and other information which the Commission considers relevant to any final trade regulation rule will be included in the rulemaking record,[38] and thus appellants' claims may be adequately

**32.** Brief for appellants at 39.

**33.** *Id.* at 34.

**34.** *Id.* at 31.

**35.** The Commission noted this distinction and explained the rationale for Rule 1.18(c) in a statement addressing post-promulgation comments on the rule, 42 Fed.Reg. 60562 (1977):

The second major category of comments suggested that the scope of the rule be expanded to prohibit Commission staff members who have participated in the rulemaking proceeding from communicating with Commissioners or their personal staffs. The rationale for the suggested change is that allowing staff communications would give an unfair advantage to advocates of the proposed rule. The analogy given is that the rulemaking staff is comparable to complaint counsel in adjudications, who are prohibited from communicating on an ex-parte basis with decisionmakers.

The comparison of rulemaking with adjudication is not appropriate. The distinction in staff roles between adjudication and rulemaking has long been recognized. The APA provisions on separation of functions, 5 U.S.C. [§] 554(d), for example, applies [sic] only to adjudicatory proceedings. Similarly, the APA prohibitions of ex parte communications by interested persons outside the agency applies [sic] only to matters required by statute to be determined on the record after opportunity for an agency hearing, 5 U.S.C. (Supp. V) section 557(d), a category which does not include Magnuson-Moss rulemaking. While the staff in an adjudication is engaged in a prosecutorial activity, rulemak-

ing staff are responsible for assisting the Commission in its quasi-legislative role. The rulemaking staff [has] the responsibility of seeing that a complete record is established.

In light of the above considerations, the Commission does not believe that staff communications should be banned. Staff communications serve a positive function, by allowing Commissioners, in reviewing what are often massive records that have not been shaped by a clear-cut adversarial process, to receive assistance from those persons in the Commission who are most familiar with the record. To seek assistance from staff members who have not participated in the rulemaking proceeding, as some comments suggest, would result in a misallocation of resources by ignoring the people best-suited to aid the Commission. Accordingly, the Commission has determined not to expand the scope of the rule.

**36.** JA 159–160. *See, e. g., Hercules, Inc. v. EPA*, 194 U.S.App.D.C. 172, 598 F.2d 91 (D.C. Cir. 1978); *Home Box Office, Inc. v. FCC*, 185 U.S.App.D.C. 142, 567 F.2d 9 (D.C.Cir.) (*per curiam*), cert. denied, 434 U.S. 829, 98 S.Ct. 111, 54 L.Ed.2d 89 (1977).

**37.** *See* 15 U.S.C. § 57a(e)(3) (reviewing court must take due account of the rule of prejudicial error); *cf. Home Box Office, Inc. v. FCC, supra* note 36, 185 U.S.App.D.C. at 199–200, 567 F.2d at 58–59 (court would examine the significance of undisclosed, external *ex parte* contacts before rule under review would be invalidated).

**38.** 16 C.F.R. § 1.18(a) (1979).

considered by a Court of Appeals upon review of a final rule. Having shown neither a patent violation of agency authority nor a manifest infringement of substantial rights irremediable by the statutory method of review, appellants were not entitled to relief from the District Court.

### C

Finally, appellants argue that Section (D)(2)(e) of the children's advertising rules, requiring participants to submit all studies and surveys in their possession that pertain to their presentations at the hearings, burdens their allegedly "unconditional right" [39] under Section 18 and the First Amendment to present written and oral comments at the rulemaking proceedings.

It flies in the face of reason to suggest that Congress intended Section 18 to grant a rulemaking participant the unqualified right to suppress relevant documents and studies in its possession while making a possibly biased and inaccurate presentation to the Commission, perhaps using other favorable documents and studies which it had prepared for the occasion, when that body is exercising legislative powers delegated to it by Congress. Indeed, the legislative history suggests the contrary:

> Participation of any interested person in an oral hearing would be *subject to rules and rulings which the Commission is authorized to make to avoid unnecessary costs or delay.* This would assure *that oral presentations* and cross-examination *could not be used as devices to interfere*

*with the Commission's effective use of rulemaking.*[40]

The Commission issued Section (D)(2)(e) pursuant to its congressional mandate "to avoid unnecessary costs or delay." 15 U.S.C. § 57a(c)(2). Obviously, it assists the Commission and the parties in identifying the "disputed issues of material fact" to be reserved for cross-examination, the purpose of which is to cut through to the heart of the matter to find the truth.

The question then is whether the existence [41] of Section (D)(2)(e) is likely to subject parties wishing to participate in this rulemaking to obligations substantially different from those already applicable under the FTC Act. Section 18 subjects all participants to cross-examination by both the Commission and other participants in order to assure a full and fair presentation of relevant facts. Section (D)(2)(e) is designed to achieve the same end. It is hoped that participants will voluntarily comply with the rule's provisions in furtherance of the public interest in efficient and responsible rulemaking. However, if participants choose not to comply, then the Commission will achieve that end, albeit less efficiently, through means of enforcement that are within its recognized authority. To the extent Section (D)(2)(e) is enforced by subpoena, participants are subject to the FTC's usual statutory subpoena power.[42] And to the extent other consequences may be attached to noncompliance with its requirements,[43] Section (D)(2)(e) accords with this court's prior rulings that agencies may rely

---

**39.** Brief for appellants at 50.

**40.** H.R.Rep. No. 1606, *supra* note 24, at 33 (emphasis added).

**41.** The rule is not self-enforcing, and I do not now decide whether it might be unlawful as applied in a given fact situation.

**42.** 15 U.S.C. § 49 (1976). The Commission did in fact invoke its subpoena power as the means

of enforcing § (D)(2)(e) with respect to several participants in the legislative hearing, including one of the appellants herein. *See* brief for appellees at 54 n.44.

**43.** The presiding officer is authorized to draw adverse inferences from noncompliance, or to assign no weight to presentations. *See* 44 Fed. Reg. 3496 (1979); note 2 *supra*.

on measures other than subpoenas when parties withhold information uniquely within their control.[44] Thus I think the apparent effect of Section (D)(2)(e) simply consists of obligations now extant, and appellants' claims of illegality are, at best, purely conjectural.

Appellants also see a First Amendment problem with Section (D)(2)(e) in that it somehow inhibits their right to participate in the rulemaking proceeding. The point is so trivial and so lacking in merit that the District Court did not even address it. In any event, appellants may not participate in the rulemaking on their own terms. Unless they can *show* that the Commission's terms are unlawful under the First Amendment or otherwise, they become the price for participation. Certainly appellants have not here shown Section (D)(2)(e) to be so obviously unlawful as to justify interlocutory judicial review in the middle of the administrative proceedings.

As the District Court held, appellants' claims are not ripe for judicial resolution in any court, regardless of whether the focus is on the substantive merits of the rule or on the "substantial impact" which allegedly makes procedural rules "substantive" for purposes of APA notice and comment.[45] In addition, the Commission's revision of Section (D)(2)(e) while this appeal was pending indicates that the District Court did not err in finding that the rules lacked finality. Indeed, the Section (D)(2)(e) revision may well have rendered this aspect of the case moot.[46]

## V

Congress in Section 18 set the substantive rules for this proceeding. The rules being

employed by the Commission in the children's advertising proceeding are, as Judge Gesell held, clearly rules of procedure.[47] In their effort to disrupt and frustrate the Commission's proceeding, appellants have mischaracterized both the general nature and the specific nature of participants' rights under Section 18. Congress never intended that persons interested in an FTC rulemaking proceeding could present only information that suited their own purpose; participants have always been subject by statute to cross-examination and subpoena, and by prior court decision to other measures designed to achieve a balanced consideration of facts.[48] Congress never intended that participants in informal rulemaking under Section 18 would have the type of wide-ranging cross-examination rights afforded parties in formal adjudication; participants were authorized to cross-examine witnesses only on designated disputed issues and only when the Commission considered that procedure to be both appropriate and necessary.[49]

The Supreme Court made this observation in *Vermont Yankee, supra,* 435 U.S. at 524, 98 S.Ct. at 1202:

[T]his Court has for more than four decades emphasized that the formulation of procedures [in rulemaking proceedings] was basically to be left within the discretion of the agencies to which Congress had confided the responsibility for substantive judgments. * *. *

The Court has also lectured us, again and again, that an agency's interpretation of its own statute should be accorded "great def-

---

**44.** *See, e.g., International Union, UAW v. NLRB,* 148 U.S.App.D.C. 305, 314–315, 459 F.2d 1329, 1338–1339 (D.C.Cir. 1972); *NLRB v. Ship Shape Maintenance Co.,* 154 U.S.App.D.C. 186, 192, 474 F.2d 434, 440 (D.C.Cir. 1972).

**45.** *See* note 20 *supra.*

**46.** *See* note 3 *supra.*

**47.** *See* note 20 *supra.*

**48.** *See* 15 U.S.C. § 57a(c)(2); cases cited at note 44 *supra.*

**49.** *See* 15 U.S.C. § 57a(c)(1)(B).

erence" by the judiciary. *Udall v. Tallman, supra*, 380 U.S. at 16, 85 S.Ct. 792, 13 L.Ed.2d 616.[50] If there is one thing the Congress made clear in passing the legislation we interpret today, as did a unanimous Supreme Court in *Vermont Yankee*, it is that courts should allow agencies breathing room to comply with the congressional mandate to work their will within the law, to experiment[51] and to innovate in the public interest in an effort, among other things, to relieve the three constitutional branches of some of the more mundane chores of government. Courts should at least wait until the agency, particularly one experimenting with and interpreting a new statute, has exercised its responsibility under law before subjecting it to judicial judgment. Disrupting an ongoing administrative process is not done with grace, even by judges. It is a tactic of delay and frustration which Congress has outlawed in this case. *See* 15 U.S.C. § 57a(c)(2), (e)(5)(C); *Nader v. Volpe, supra.*

---

**50.** *See* note 13 *supra*.

**51.** "[T]he point is that Congress has chosen to leave such questions with the Commission, to which it has given the flexibility to experiment

with new ideas as changing conditions require." *Columbia Broadcasting System, Inc. v. Democratic Nat'l Committee, supra* note 13, 412 U.S. at 122, 93 S.Ct. at 2096.